741 N.W.2d 687 (2007)
16 Neb. App. 64
3'S LOUNGE INC., a Nebraska Corporation, Appellant
v.
Frank E. TIERNEY and Ok K. Tierney, Husband and Wife, Appellees.
No. A-05-1164.
Court of Appeals of Nebraska.
October 30, 2007.
*692 Thomas R. Ostdiek, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., Omaha, for appellant.
Martin A. Cannon, of Cannon Law Office, Omaha, for appellees.
IRWIN, SIEVERS, and CASSEL, Judges.
CASSEL, Judge.

I. INTRODUCTION
3's Lounge Inc. held an option to purchase realty that it leased from HEB-AR, Inc. (HEB-AR). HEB-AR conveyed a portion of the leased property to Frank E. Tierney and Ok K. Tierney. 3's Lounge sued HEB-AR and the Tierneys to obtain title to the property conveyed to the Tierneys. Prior to trial, 3's Lounge settled its claims against HEB-AR and the district court for Douglas County dismissed HEB-AR from the lawsuit. After trial, the district court dismissed the claims against the Tierneys, finding that the dismissal of HEB-AR extinguished 3's Lounge's claims against the Tierneys. We conclude that as to the property conveyed to the Tierneys, the Tierneys were primarily liable to 3's Lounge, and that therefore, the release of HEB-AR, which was only secondarily liable, did not release the Tierneys. We reverse, and remand with directions.

II. BACKGROUND
On August 9, 1994, Club 10 Inc. leased a tract of real property (the leased property) from HEB-AR. Richard Walker and his brother signed the lease as corporate officers of Club 10 and individually as guarantors of Club 10's performance. The leased property is commonly referred to as "8919 North 30th Street, Omaha, Nebraska." While the legal description is complex, we need only state that it includes "Lot 6, Block 13," in "Florence, an Addition to the City of Omaha."
Club 10 initially agreed to lease the leased property for a 2-year term at a rate of $500 per month. The lease agreement (the lease) granted Club 10 the right to exercise nine separate and successive 2-year renewals.
The lease also gave Club 10 an irrevocable option to purchase the leased property. The lease specified that Club 10 could exercise its option at any time during its term, including during any extension or renewal. The lease established that if Club 10 exercised its option to purchase within 10 years of the execution of the lease, the purchase price would be $60,000, with credit given for all rental payments made by Club 10. The lease provided that all rental payments which became due after Club 10 provided notice of its intention to exercise the option would be suspended.
HEB-AR covenanted in the lease that it owned the leased property and that it "[would] not sell, alienate, assign, pledge, *693 or otherwise transfer the [leased property] during any portion of the lease term, including but not limited to any renewals or extensions thereof." The lease also contained a provision stating that the lease and irrevocable option to purchase were personal to HEB-AR and Club 10 and "may not be assigned, transferred, sublet, or otherwise transferred without obtaining the prior written consent of each party [to the lease]."
The lease was recorded on September 9, 1994. In October 1995, Walker bought his brother's shares in Club 10 to become the sole owner of the corporation. On October 26, Club 10 changed its corporate name to 3's Lounge. The corporation effected the name change by adopting an amendment to its articles of incorporation. A file stamp shows that the Nebraska Secretary of State received, filed, and recorded the amendment on November 3.
On August 22, 1996, HEB-AR conveyed a portion of the leased property to the Tierneys, the record title owners of "Lot 7, Block 13." The north boundary of Lot 7 adjoins the south boundary of Lot 6. According to a survey plat, which recites dimensions shown on the original plat, Lots 6 and 7 are each 66 feet north and south and 132 feet east and west. Both lots border 30th Street on the west and an alley on the east. The south boundary of Lot 7 adjoins Fillmore Street. The property conveyed to the Tierneys consisted of the "Southerly one third (1/3) [22 feet] of Lot 6, Block 13" (the disputed property).
On the same day that HEB-AR conveyed the disputed property to the Tierneys, HEB-AR and the Tierneys granted one another reciprocal easements. HEB-AR granted the Tierneys an easement over a 10-foot strip of the portion of Lot 6 that had a common boundary with the disputed property, more particularly described as "[a] parcel [10] feet wide Starting [22 feet] North of the southerly property line of Lot 6." In return, the Tierneys granted HEB-AR a 10-foot wide easement along the northern boundary of the disputed property.
On October 20, 2000, Walker, acting on behalf of 3's Lounge, sent a letter to the Tierneys and to HEB-AR notifying them of 3's Lounge's intention to exercise its option to purchase the leased property, including the disputed property. The Tierneys refused to recognize 3's Lounge's right to purchase the disputed property, giving rise to the instant lawsuit.
On August 29, 2001, 3's Lounge filed a petition seeking a declaratory judgment against HEB-AR and the Tierneys. In 3's Lounge's operative petition, filed at a later date, it alleged that the Tierneys had refused to recognize its right to purchase the disputed property and had asserted that their easement interest in a strip of land on Lot 6 was superior to 3's Lounge's interest in the same property. 3's Lounge alleged that the Tierneys took title to the disputed property subject to its right to purchase and that the Tierneys' easement interest was not superior to 3's Lounge's interest in the property.
3's Lounge set forth multiple causes of action. We describe only those causes of action that were not resolved by the court prior to trial. First, 3's Lounge requested that the court enter a declaratory judgment, declaring 3's Lounge's right to purchase the disputed property and determining the portion of the purchase price under the terms of the lease that would be properly allocable to the Tierneys in compensation for the disputed property. Next, 3's Lounge alleged that the Tierneys' refusal to convey the disputed property to 3's Lounge breached the terms of the lease. 3's Lounge requested that the court order specific performance of the terms of the option to purchase. Finally, 3's Lounge *694 requested that the court quiet title to the disputed property in 3's Lounge if the court determined that declaratory judgment was not appropriate.
The Tierneys filed an answer denying the material allegations of the petition. The Tierneys asserted several affirmative defenses, including estoppel, accord and satisfaction, and consent. With regard to consent, the Tierneys alleged that 3's Lounge had consented to the conveyance of the disputed property and to the Tierneys' easement.
On April 27, 2004, in recited consideration of $10, HEB-AR conveyed to 3's Lounge all of the leased property except for the disputed property. 3's Lounge also accepted payment of an unspecified amount from HEB-AR as part of the arrangement. On May 5, 3's Lounge and HEB-AR filed a joint stipulation and moved the court for an order dismissing HEB-AR as a defendant in the action because the parties had reached a settlement agreement. The court dismissed HEB-AR from the action. Neither the motion nor the order specified whether the dismissal was "with prejudice."
On May 5 and July 7, 2004, the court conducted a bench trial to resolve 3's Lounge's remaining claims against the Tierneys. After the trial, the district court dismissed 3's Lounge's petition. The court entered a lengthy decree, finding in favor of 3's Lounge on many issues before ultimately determining that by settling its claims against HEB-AR, 3's Lounge extinguished any claims it had against the Tierneys.
The court stated, "The only claim of [3's Lounge] to the disputed property is through the [l]ease with [HEB-AR]." The court acknowledged that under the ruling in Harper v. Runner, 85 Neb. 343, 123 N.W. 313 (1909), both HEB-AR and the Tierneys were bound by the option to purchase. However, according to the court, the relevant question was whether, once 3's Lounge resolved all of its claims against HEB-AR, it could continue its claims against the Tierneys. The court determined that the Tierneys were subject only to those claims that existed under the lease between 3's Lounge and HEB-AR. The court stated, "It seems axiomatic that when [3's Lounge] settled whatever claims it may have had against [HEB-AR] with regard to the option to purchase, [the Tierneys'] obligation, whatever it may be, was extinguished." Put another way, the court reasoned that the Tierneys had no greater obligation than that which existed between 3's Lounge and HEB-AR.
3's Lounge filed a motion for a new trial, alleging that the district court erred as a matter of law and fact in concluding that the dismissal of HEB-AR from the lawsuit terminated 3's Lounge's causes of action against the Tierneys. After a hearing, the district court overruled 3's Lounge's motion for a new trial.
3's Lounge timely appeals.

III. ASSIGNMENTS OF ERROR
3's Lounge assigns, consolidated and restated, that the district court erred in (1) treating its action as one at law rather than in equity; (2) holding that when it reached a settlement with HEB-AR and HEB-AR was dismissed from the lawsuit, the lease was extinguished and the Tierneys were released from their obligation to convey the disputed property to 3's Lounge; (3) finding that its monetary settlement with HEB-AR was intended as monetary damages for HEB-AR's alleged breach of contract; (4) failing to find that the monetary settlement between 3's Lounge and HEB-AR was intended to prorate the option purchase price; (5) finding that the dismissal of HEB-AR was *695 with prejudice; (6) allowing an officer of HEB-AR to testify regarding his proffered reason for entering into a settlement agreement with 3's Lounge; and (7) overruling its motion for a new trial.

IV. STANDARD OF REVIEW
3's Lounge alleges that the district court erred in treating its action against HEB-AR and the Tierneys as one at law. However, in its brief, 3's Lounge also states that its petition was pled in equity and "was treated as an action in equity by the [d]istrict [c]ourt." Brief for appellant at 17.
To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. Olivotto v. DeMarco Bros. Co., 273 Neb. 672, 732 N.W.2d 354 (2007). In view of 3's Lounge's failure to argue the issue and its concession that the district court treated the action as one in equity, we do not consider 3's Lounge's first assigned error as such.
We do, however, consider whether 3's Lounge's actions were at law or in equity in order to determine the correct standard of review. See Precision Enters. v. Duffack Enters., 14 Neb.App. 512, 710 N.W.2d 348 (2006). The essential character of a cause of action and the remedy or relief it seeks as shown by the allegations of the complaint determine whether a particular action is one at law or in equity. Dillon Tire, Inc. v. Fifer, 256 Neb. 147, 589 N.W.2d 137 (1999). 3's Lounge requested a declaratory judgment and that the district court quiet title to the disputed property in 3's Lounge. It also set forth a breach of contract claim, but requested specific performance as a remedy.
An action for specific performance sounds in equity. Vande Guchte v. Kort, 13 Neb.App. 875, 703 N.W.2d 611 (2005). A quiet title action sounds in equity. Huffman v. Peterson, 272 Neb. 62, 718 N.W.2d 522 (2006). An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. R & S Investments v. Auto Auctions, 15 Neb.App. 267, 725 N.W.2d 871 (2006).
We determine that the nature of the dispute sounds in equity. 3's Lounge's goal in the suit is title to the disputed property, not monetary damages. On appeal from an equity action, we decide factual questions de novo on the record and, as to questions of both fact and law, are obligated to reach a conclusion independent of the trial court's determination. County of Sarpy v. City of Gretna, 273 Neb. 92, 727 N.W.2d 690 (2007). Where credible evidence is in conflict on material issues of fact, the court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. Precision Enters. v. Duffack Enters., supra.

V. ANALYSIS

1. SETTLEMENT WITH HEB-AR
The district court concluded that when 3's Lounge settled its claims against HEB-AR, it also extinguished its claims to enforce the option to purchase against the Tierneys. 3's Lounge asserts that this finding by the district court was erroneous. We agree.
HEB-AR and 3's Lounge entered into a lease agreement with an irrevocable option to purchase. Because they reached an express agreement binding both parties, they were in privity of contract with one another. See Gatchell v. Henderson, 156 Neb. 1, 54 N.W.2d 227 (1952). Because they were connected through privity *696 of contract, after the disputed property was transferred to the Tierneys HEB-AR remained bound by 3's Lounge's option to purchase the disputed property until 3's Lounge relieved HEB-AR of this obligation. See Restatement (Second) of Property § 16.1(1)(a) (1977).
In contrast, the Tierneys were not in privity of contract with 3's Lounge. These parties had no contractual relationship. However, as we discuss below, the Tierneys came into privity of estate with 3's Lounge upon their receipt of title to the disputed property and acquired their title to the disputed property subject to 3's Lounge's option to purchase.

(a) Nebraska Precedent
In Harper v. Runner, 85 Neb. 343, 346, 123 N.W. 313, 314 (1909), a case that is factually similar to the instant case, the Nebraska Supreme Court held:
An option based upon a sufficient consideration for the purchase of real estate during a definite period cannot be withdrawn before the expiration of that time, but vests the legal holder thereof with a right to acquire an interest in the land.... A subsequent purchaser who buys with knowledge that the occupant claims to have a contract for the purchase of the land is bound by the terms of that agreement, whether it is an option or an executory contract equally binding each party thereto.
(Citations omitted.)
It follows that if the Tierneys had knowledge of 3's Lounge's option to purchase when they took possession of the disputed property, they became bound by the option. The testimony at trial demonstrated that the Tierneys had the requisite knowledge.
Frank was asked whether he knew, prior to receiving title to the disputed property, that 3's Lounge was leasing Lot 6. He responded, "Well, you know, I actually  you want to know the truth? I thought [HEB-AR] was leasing it to [Club 10] because I ran a title search." He testified that he believed that Walker's brother was the tenant in possession of the option to purchase and that Club 10's interest in the property was extinguished. However, he admitted that the sign on the property read "3's [Lounge]" and not "Club 10." He also admitted that he knew that Walker (not his brother) was the contact for 3's Lounge and that an officer of HEB-AR had informed him that Walker was the tenant of Lot 6.
Possession of the land is notice to the world of the possessor's rights therein and of all possessory interests of which inquiry of the possessor would elicit knowledge. Grand Island Hotel Corp. v. Second Island Development Co., 191 Neb. 98, 214 N.W.2d 253 (1974). Had Frank inquired into the status of 3's Lounge's interest, he would have easily discovered that 3's Lounge held an option to purchase the disputed property. Further, the name change from Club 10 to 3's Lounge was properly recorded in the office of the Secretary of State.
The district court found that Frank most likely knew that 3's Lounge had an option to purchase the disputed property. The court determined that there was "little or no evidence that [Frank] did not have actual or at least constructive knowledge that [3's Lounge] had some interest in the [disputed property]." We give weight to this finding and conclude that the Tierneys had knowledge of 3's Lounge's option to purchase and, therefore, pursuant to the holding in Harper v. Runner, supra, were bound by the option.

*697 (b) Restatement
The Restatement's approach to this issue is consistent with the holding in Harper v. Runner, The Restatement (Second) of Property § 16.1 at 116 (1977) states:
(2) A transferee of an interest in leased property is obligated to perform an express promise contained in the lease if:
(a) the promise creates a burden that touches and concerns the transferred interest;
(b) the promisor and promisee intend that the burden is to run with the transferred interest;
(c) the transferee is not relieved of the obligation by the person entitled to enforce it; and
(d) the transfer brings the transferee into privity of estate with the person entitled to enforce the promise.
A transferee of an interest in leased property comes into privity of estate with the person entitled to enforce a promise if, after the transfer, "one holds directly under the other." Id., comment e. at 123. If the transferor is the landlord, the transferee comes into privity of estate with the other party to the lease if the interest in the reversion that the transferee receives would place him first in line to succeed the other party to the lease in the possession of the leased property if the other party's interest terminated immediately. Id. After HEB-AR conveyed the disputed property to the Tierneys, the Tierneys became first in line to succeed 3's Lounge in possession of the disputed property and therefore came into privity of estate with 3's Lounge.
The other requirements of § 16.1(2) were also fulfilled. HEB-AR's promise to honor 3's Lounge's option to purchase created a burden that touched and concerned the disputed property. A promise by the landlord touches and concerns his interest in the leased property to the extent its performance is not related to other property and affects the use and enjoyment of the leased property by the tenant. Id., § 16.1, comment b. HEB-AR's promise clearly did not relate to any other property and affected 3's Lounge's use and enjoyment of the disputed property.
HEB-AR and 3's Lounge intended that the burden run with the transferred interest. The burden of a promise will not run to a transferee if the original contracting parties manifest an intention that the promise not run with the land. See id., comment e. Such intention may be found "from the facts and circumstances surrounding the execution of the lease as well as from language in the lease itself." Id. at 122. The lease included a provision stating that the lease and option to purchase were personal to 3's Lounge and HEB-AR. While the right to exercise the option was personal to 3's Lounge, the burden associated with that right clearly ran with the land. The lease granted 3's Lounge the absolute right to purchase the leased property if it exercised its option in accordance with the terms of the lease. The lease stated that the option was "irrevocable and cannot be changed or altered or revoked by [HEB-AR]." We conclude that the option was not revoked by the transfer of the property to the Tierneys and that the burden of the option ran with the property.
Finally, 3's Lounge never relieved the Tierneys of the obligation created by the option to purchase. The district court held that when 3's Lounge settled its claims against HEB-AR, the Tierneys' obligations under the lease and option to purchase were extinguished. The Restatement *698 does not support the district court's holding. While 3's Lounge released its claims against HEB-AR, it did not release the Tierneys  a critical distinction under the Restatement.

(c) Release of Surety Does Not Release Primary Obligor
The Restatement recognizes that after a promisor transfers his or her interest in leased property, the promisor becomes secondarily liable to the person entitled to the benefit of the promise. See Restatement (Second) of Property § 16.1, comment e. (1977). The promisor becomes, in effect, a surety. See id. In the instant case, after HEB-AR transferred the disputed property to the Tierneys, the Tierneys became primarily liable to 3's Lounge upon the obligation to convey the disputed property and HEB-AR became, in effect, a surety.
While the release of a principal without the surety's consent releases the surety, the converse is not true. The release of a surety does not release the principal obligor of his or her duty.
"Not only may a creditor, if he [or she] so chooses, release or compound with a surety, but he [or she] may do so without in any way affecting his [or her] right to hold the principal to his [or her] ultimate liability. In other words, not only will such a release have no effect in discharging the principal, but the latter will not be entitled to credit on his [or her] obligation for any sum paid by the surety in consideration of his [or her] release as such surety."
Coleman v. Beck, 142 Neb. 13, 21, 5 N.W.2d 104, 108 (1942).
In Price v. S.S. Fuller, Inc., 639 P.2d 1003 (Alaska 1982), the Alaska Supreme Court applied a similar rule in a situation where the liability was established by privity of estate. In that case, the lessee of a tract of land assigned the lease to another party, the transferee. The lessor of the property commenced actions against both the original lessee and the transferee to recover the leased property and for unpaid rent. Before a judgment was rendered, the lessor dismissed all claims against the original lessee. Judgment was thereafter entered against the transferee. The transferee appealed, alleging, first, that because the original lessee remained liable based upon privity of contract for the transferee's defaults, the release of the lessee acted as a release of the transferee, and, second, that the rule that the release of one joint obligor under a contract releases the other joint obligor should have been applied to the case.
The Alaska Supreme Court first held that the lessee and transferee were not joint obligors. Rather, the court held that the original lessee was, in effect, a surety and was secondarily liable to the lessor as between the lessee and the transferee. The court held that this secondary relationship arose from the lessee's continuing liability to the lessor under privity of contract while the transferee was liable through privity of estate. While the court noted that the release of the principal would normally release the surety, it recognized that "a release of the surety has no effect upon the principal's obligation except as a satisfaction." Id. at 1009.
While the instant case differs from Price in that the transferor in the instant case, HEB-AR, was the landlord, not the tenant as in Price, the same principles apply to the case before us. The release of HEB-AR had no effect upon the Tierneys' obligation to 3's Lounge. The Tierneys remained obligated to 3's Lounge and had an obligation to convey the disputed property to 3's Lounge upon exercise of the option. *699 The district court's holding to the contrary is erroneous and is reversed.

(d) Tierneys' Arguments
We reject the Tierneys' contrary arguments. The Tierneys assert the same argument that was made by the transferee in Price  that they should have been discharged from liability when HEB-AR was discharged, because they were joint obligors with HEB-AR. Of course, the voluntary release of one joint judgment debtor, or joint obligor, operates as a release of his or her co-obligor. See Coleman v. Beck, supra. However, this rule has no application to the case before us. HEB-AR was not a joint obligor with the Tierneys. We find no evidence that HEB-AR and the Tierneys intended to create a joint obligation. Instead, after HEB-AR's conveyance to the Tierneys, HEB-AR remained secondarily liable to 3's Lounge. This argument is without merit.
The Tierneys also allege that 3's Lounge waived its right to exercise its option to purchase the disputed property. Waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right. MBH, Inc. v. John Otte Oil & Propane, 15 Neb.App. 341, 727 N.W.2d 238 (2007). In order to establish a waiver of a legal right, there must be clear, unequivocal, and decisive action of a party showing such purpose, or acts amounting to estoppel on his or her part. Id.
3's Lounge had a vested right to purchase the disputed property. See Winberg v. Cimfel, 248 Neb. 71, 532 N.W.2d 35 (1995). There is no evidence in the record that 3's Lounge waived such right. Walker testified that at no point did he waive 3's Lounge's right to exercise its option to purchase the disputed property. Although he waited several years after the transfer of the disputed property to the Tierneys to exercise 3's Lounge's option, that alone does not show a clear, unequivocal, and decisive action to waive the option. The district court was persuaded by Walker's testimony that he did not act immediately after HEB-AR transferred the disputed property to the Tierneys because he did not believe that the transfer "was worth the paper it was written on." We give weight to the district court's reliance on this testimony and find that this argument has no merit.

2. APPROPRIATE RELIEF
Because the district court determined that 3's Lounge's claims were extinguished, it did not consider the appropriate relief. Real estate is assumed to possess the characteristic of uniqueness, and, therefore, special value, necessary for availability of specific performance. Frenzen v. Taylor, 232 Neb. 41, 439 N.W.2d 473 (1989). Specific performance should generally be granted as a matter of course or right regarding a contract for the sale of real estate where a valid, binding contract exists which is definite and certain in its terms, mutual in its obligation, free from overreaching fraud and unfairness, and where the remedy at law is inadequate. See id. 3's Lounge is entitled to specific performance of the rights conferred by its option to purchase the disputed property, including the right to a conveyance of the disputed property from the Tierneys.
A party seeking specific performance must show his or her right to the relief sought, including proof that the party is ready, able, and willing to perform his or her obligations under the contract. Langemeier v. Urwiler Oil & Fertilizer, 265 Neb. 827, 660 N.W.2d 487 (2003). Of course, 3's Lounge is required to perform its obligations under the option  the principal *700 obligation being the payment of the purchase price.
3's Lounge sought a determination by the district court of the share of the purchase price owed to the Tierneys. HEB-AR and the Tierneys failed to allocate the purchase price between themselves. Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. Trieweiler v. Sears, 268 Neb. 952, 689 N.W.2d 807 (2004). It therefore falls to the court to equitably apportion the purchase price.
A decree for specific performance must as nearly as possible order the contract's performance according to its terms. Fritsch v. Hilton Land & Cattle Co., 245 Neb. 469, 513 N.W.2d 534 (1994). The contract in the instant case provided for an option price of $60,000. 3's Lounge was to receive credit against the price for its rental payments of $500 per month for 10 years  thus, the credit would precisely equal the purchase price. As a result of the settlement with HEB-AR, HEB-AR refunded or forgave the seven installments of rent due from January 1 to August 1, 2004  a total of $3,500. While one might calculate a variety of allocations based upon the evidence before us, requiring 3's Lounge to pay the Tierneys the sum of $3,500 as a condition of the decree of specific performance achieves the goal of attaining performance of the contract's terms as closely as possible by requiring 3's Lounge to pay the full contract price  no more and no less. Of course, the costs of the action and compliance with the decree shall be taxed to the Tierneys. Upon remand, the district court shall fashion a decree of specific performance in conformity with this opinion.

3. REMAINING ASSIGNMENTS OF ERROR
In view of our disposition of 3's Lounge's principal contention on appeal, we need not consider its other assignments of error. See Kelly v. Kelly, 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court not obligated to engage in analysis not needed to adjudicate case and controversy before it).

VI. CONCLUSION
We conclude that 3's Lounge's claims against the Tierneys were not extinguished when 3's Lounge reached a settlement agreement with HEB-AR. As a result of the conveyance of the disputed property from HEB-AR to the Tierneys, the Tierneys were in privity of estate with 3's Lounge and primarily liable to perform the obligations of the option contract entitling 3's Lounge to purchase the disputed property. 3's Lounge is entitled to a decree of specific performance requiring the Tierneys to convey the disputed property, subject to 3's Lounge's obligation to perform its contractual obligations, including payment of the balance of the purchase price. We reverse the judgment of the district court and remand the cause to that court with instructions to fashion a decree of specific performance in conformity with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.