Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/15/2022 12:08 AM CDT

State of Nebraska, appellant, v.
Clay Younglove Bixby, appellee.

___ N.W.2d ___

Filed March 11, 2022.    Nos. S-21-091, S-21-147.

1. **Judgments: Speedy Trial: Appeal and Error.** Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.
2. **Judgments: Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.

Appeals from the District Court for Grant County: Travis P. O'Gorman, Judge. Reversed and remanded for further proceedings.

Douglas J. Peterson, Attorney General, James D. Smith, Senior Assistant Attorney General, and Terry Curtiss, Grant County Attorney, for appellant.

Bell Island, of Island Law Office, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

After a mistrial, Clay Younglove Bixby filed a plea in bar to prevent the State from retrying its case against him. Bixby's plea in bar was denied by the district court. That denial was

affirmed by the Nebraska Court of Appeals,[1] and we denied Bixby's petition for further review.

Following this court's denial of the petition for further review, the Court of Appeals issued a mandate, which was spread on the docket of the district court in August 2020. A new trial was scheduled for January 2021. One week before trial, Bixby filed a motion for absolute discharge, which was granted after the district court found that the recalculated speedy trial deadline was December 29, 2020. The State appealed; we granted the State's petition to bypass the Court of Appeals.

Upon review, we find that Bixby's motion for absolute discharge was premature, that time remained on his speedy trial clock, and that the district court's order granting such motion was clearly erroneous. We therefore reverse the decision of the district court and remand the cause for further proceedings.

## II. FACTUAL BACKGROUND

On May 15, 2018, Bixby was charged by information with driving under the influence, possession of an open container, and driving on the shoulder of a highway. Bixby went to trial on these charges on October 24. At trial, the prosecutor solicited improper testimony. Bixby sought a mistrial, which was granted on October 30.

On November 19, 2018, Bixby filed a plea in bar arguing that the State should not be able to retry the case. This plea in bar was denied February 1, 2019, and a new trial was set for March 11. However, on March 4, Bixby filed a notice of appeal challenging the denial of his plea in bar.

On March 3, 2020, the Court of Appeals affirmed the denial of Bixby's plea in bar.[2] Bixby filed a petition for further review, which was denied by this court on April 29.

---

[1] See *State v. Bixby*, No. A-19-237, 2020 WL 1026734 (Neb. App. Mar. 3, 2020) (selected for posting to court website).

[2] See *id.*

Accordingly, a mandate was issued by the Court of Appeals in May, and an order spreading the mandate was entered by the district court in August. At a hearing on October 30, a new trial was set for January 26, 2021. On January 20, Bixby filed a motion for absolute discharge, asserting that the State had not complied with statutory speedy trial requirements pursuant to Neb. Rev. Stat. § 29-1207 et seq. (Reissue 2016).

The district court found that Bixby's mistrial had triggered a new 6-month deadline, meaning Bixby's trial should have occurred by April 24, 2019, unless excludable time applied. The court determined that there was a total of 615 excludable days to be charged to Bixby for his interlocutory appeals: 74 days were excluded between November 19, 2018, and February 1, 2019, due to the plea in bar filed by Bixby, and 541 days were excluded between March 4, 2019, and August 26, 2020, due to Bixby's appeal regarding the denied plea in bar.

In consideration of these 615 excludable days, the district court determined that Bixby's new speedy trial deadline was December 29, 2020. Because the January 26, 2021, trial date fell beyond that deadline, the court granted Bixby's motion for absolute discharge and dismissed the case on January 21, 2021.

The State perfected an appeal and then petitioned this court to bypass the Court of Appeals. We granted the State's petition to bypass on November 8, 2021, at which time this case was moved to our docket.

### III. ASSIGNMENT OF ERROR

On appeal, the State assigns that the district court erred in sustaining Bixby's motion for a speedy trial absolute discharge and dismissing the case.

### IV. STANDARD OF REVIEW

[1] Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a

factual question which will be affirmed on appeal unless clearly erroneous.[3]

[2] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.[4]

## V. ANALYSIS

### 1. Jurisdiction and Appeal Procedure

As a preliminary matter, the State in its brief sets out the two pathways it utilized to raise this appeal. First, the State filed an appeal under case No. A-21-147, relying on Neb. Rev. Stat. §§ 24-204 (Reissue 2016) and 25-1912 (Cum. Supp. 2020). This appeal was filed within 30 days of the district court's dismissal order, before the State's application to docket an appeal had been confirmed. The State later filed and perfected an appeal under case No. A-21-091, in accordance with Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2020).

Because the State perfected its appeal under § 29-2315.01, we need not address the parties' arguments regarding jurisdiction under § 25-1912. This court has jurisdiction to hear this appeal pursuant to § 29-2315.01. For completeness, we note that this appeal does not raise issues of double jeopardy pursuant to Neb. Rev. Stat. § 29-2316 (Reissue 2016).[5]

### 2. No Final Disposition

On appeal, the State asserts that Bixby's plea in bar tolled the speedy trial clock from the first date of filing until the mandate on remand after Bixby's interlocutory appeal. The State points to § 29-1207(4)(a), which states that "the time from filing until final disposition of pretrial motions of the

---

[3] *State v. Liming*, 306 Neb. 475, 945 N.W.2d 882 (2020).

[4] *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002). See *State v. Liming, supra* note 3.

[5] See, *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018); *State v. Muhannad*, 286 Neb. 567, 837 N.W.2d 792 (2013).

defendant" shall be excluded in computing the time for trial. Pursuant to this language, the State asserts that the district court's speedy trial calculations were erroneous: it attributed the 31 days between the denial of Bixby's plea in bar and the filing of his interlocutory appeal from that denial to the State, even though Bixby's interlocutory appeal meant the plea in bar did not yet have a "final disposition."

### (a) Appellate Review

Bixby asserts that this court cannot consider the State's argument on this matter, as the State presented this argument for the first time on appeal and did not make the argument in front of the district court when it was deciding Bixby's motion to discharge. Bixby points to our recent opinion in *State v. Jennings*,[6] where we stated:

> Before the county court, the State opposed [the defendant's] motion for absolute discharge on just one ground: that [he] was absent or unavailable during the entire time the arrest warrant was pending, making that time excludable under § 29-1207(4)(d). We therefore confine our speedy trial analysis under § 29-1207(4) to this narrow issue.

We find *Jennings* inapplicable. In *Jennings*, it was the defendant who had appealed for reconsideration of his motion to discharge after the motion was denied by the district court. On appeal, the State's briefing did not address the merits of the lower courts' speedy trial analysis or rulings and indeed conceded that discharge would be appropriate if this court were to reach the merits of the assigned error. Accordingly, our review upon reaching the merits of the argument was limited to the narrow issue presented to the county court. This same limitation simply does not apply to this case, where the State has appealed from a motion successful to the defendant granted by the district court and where the State does not concede that discharge is appropriate.

---

[6] *State v. Jennings*, 308 Neb. 835, 846, 957 N.W.2d 143, 152 (2021).

Further, we disagree with Bixby's contention that this issue was not presented to the district court, because Bixby filed his motion for absolute discharge pursuant to "§29-1270 *et seq* [sic]." In its order granting Bixby's motion for absolute discharge, the district court made findings that the statutory right to a speedy trial is set forth in §§ 29-1207 and 29-1208, that § 29-1207(1) sets forth a 6-month deadline, that § 29-1207(4) provides for extensions to that deadline through excludable periods of delay, and that the burden of proof is on the State to show that one or more of the excluded periods under § 29-1207(4) are applicable.

While the district court's analysis focused primarily on the application of § 29-1207(3), the district court also found that Bixby's plea in bar resulted in excludable days under § 29-1207(4). Accordingly, we are able to address the State's argument that the district court erred in its determination of how many days were excluded under § 29-1207(4) as a result of Bixby's plea in bar.

(b) Additional Excludable Days

In its order granting Bixby's motion for absolute discharge, the district court explained that Bixby's speedy trial deadline, without any excludable days, was April 24, 2019. In total, the court found that there were 615 excludable days:

> [Bixby] filed his Plea in Bar on November 19, 2018. It was denied on February 1, 2019. That is 74 days. The appeal from that order was filed on March 4, 2019. By spreading the mandate on August 26, 2020, this Court reacquired jurisdiction on that date. That is 541 days for a total of 615 days.

Adding those 615 days to April 24, 2019, the new speedy trial deadline, according to the district court, was December 29, 2020.

Implicit in this calculation is a finding that the period of 31 days between February 1 and March 4, 2019—the time between the denial of the plea in bar and Bixby's appeal—was

not excludable. The State asserts that this was an error pursuant to § 29-1207(4), which states:

The following periods shall be excluded in computing the time for trial:

(a) The period of delay resulting from other proceedings concerning the defendant, including, but not limited to, an examination and hearing on competency and the period during which he or she is incompetent to stand trial; the time from filing until final disposition of pretrial motions of the defendant, including motions to suppress evidence, motions to quash the indictment or information, demurrers and pleas in abatement, and motions for a change of venue; and the time consumed in the trial of other charges against the defendant.

Under this language, the State asserts that Bixby's motion did not have a final disposition when it was denied because Bixby was able to, and did, pursue an appeal.

Thus, the question before us is whether Bixby's motion for a plea in bar had a final disposition for purposes of speedy trial calculations on the day it was denied by the district court or whether final disposition did not occur until the matter was determined by an appellate court. Because this question calls for statutory interpretation regarding § 29-1207(4)(a) and the meaning of the words "final disposition," this court must reach an independent conclusion irrespective of the determination made by the district court below.[7]

The State directs us to *State v. White* (*White I*),[8] wherein Calvin White was tried for second degree murder, use of a firearm to commit murder, and theft of an automobile. After White was convicted and sentenced, he appealed, and this court affirmed both.[9] White subsequently filed a motion for

---

[7] See, *State v. Liming, supra* note 3; *State v. Baker, supra* note 4.

[8] *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993).

[9] *Id*.

postconviction relief, and in *State v. White* (*White II*),[10] this court reversed White's convictions and sentences and remanded the cause for a new trial.

The State filed a new information charging White in the alternative with both first degree felony murder and second degree murder, in accordance with our prior determinations regarding White's earlier appeals.[11] At this point, White filed a plea in bar which, as amended, claimed that he had already been acquitted of first degree murder and that the State could not again charge him with first degree murder.[12] In *State v. White* (*White III*), this court agreed and remanded the cause for further proceedings.[13]

Shortly before White's new trial was scheduled to begin, the State filed a motion for reinstatement of White's original convictions based on opinions from this court that same year.[14] Meanwhile, White filed a motion for discharge on speedy trial grounds.[15] In *State v. White* (*White IV*),[16] upon consideration of White's motion for discharge, this court reviewed the cumulative record of all of White's four cases and determined:

> White's filing of the plea in bar on June 13, 1996, that led to *White III*, stopped the clock with 21 days having elapsed. The clock began running again as soon as the trial court regained jurisdiction over White's case by taking some action following our remand in *White III*.

This court then held that no time had elapsed off the clock since the filing of White's plea in bar on June 13, 1996, and because White's motion for discharge was filed the same day

---

[10] *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

[11] *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998).

[12] *Id.*

[13] *Id.*

[14] *State v. White*, 257 Neb. 943, 601 N.W.2d 731 (1999).

[15] *Id*.

[16] *Id.* at 948, 601 N.W.2d at 735.

that the trial court regained jurisdiction on August 20, 1998, White had "stopped the clock before it could restart," such that no time had elapsed as of the time of the opinion.[17]

In *White IV*, the issue presented on appeal in terms of White's motion for discharge was whether the speedy trial clock had restarted following a mandate on remand from this court or if it had been restarted prior to such mandate when the trial court stated that "'"[t]he week of March 20, 1995, is hereby saved for a second trial . . . ."'"[18] Our decision in *White IV* did not rest on a determination of whether the period of time between the denial of White's plea in bar and the filing of an appeal from that denial counted toward White or toward the State. But, where this court concluded that no time had elapsed, it is clear that such period of delay was counted against White and not against the State.

After our opinion in *White IV*, the Court of Appeals considered excludable days for speedy trial calculations in *State v. Hayes*.[19] On appeal, the defendant in *Hayes* argued that the period from May 9, 2000, when his motion to suppress was sustained in the district court, to December 21, when the district court entered judgment on the Court of Appeals' mandate, could not be excluded from the speedy trial calculation because the appeal was initiated by the State. The trial court noted the language of § 29-1207(4)(a) regarding "final disposition" and concluded that final disposition did not occur until the appeal was over.[20] The Court of Appeals, recognizing that it was required to reach a conclusion independent of the trial court's ruling on questions of law, agreed with this interpretation:

> In the case of a defendant's successful motion in the district court to suppress evidence, the motion is not finally granted or determined, unless there is no appeal, until

---

[17] *Id.*

[18] *Id.* at 947, 601 N.W.2d at 735.

[19] *State v. Hayes*, 10 Neb. App. 833, 639 N.W.2d 418 (2002).

[20] *Id.*

a judge of the Court of Appeals has decided the matter . . . . The time from the defendant's filing of such a motion until final determination is excluded in the speedy trial calculation.[21]

Whether the motion to suppress in *Hayes* was not finally granted or determined hinges on whether either party pursued an appeal. If there was no appeal from a granted or denied motion, the motion has a clear and final disposition for purposes of the current action. If there was an appeal, the motion is further put on hold while an appellate court reviews the issues and renders a decision. We agree with the Court of Appeals' conclusion in *Hayes* and find that in the case of a defendant's pretrial motion, the motion is not finally granted or determined, unless there is no appeal, until an appellate court has decided the matter. The time from the defendant's filing of such motion until a final determination is excludable time for purposes of a speedy trial calculation.

As was the case with *White IV*, the outcome of *Hayes* was not dependent on a finding of whether the time between a denied plea in bar and an appeal from that denial counted toward or against the defendant. Instead, the issue under consideration was whether the time for an interlocutory appeal is excludable time for purposes of speedy trial calculations when such appeal is initiated by the State rather than the defendant. Nonetheless, the Court of Appeals in *Hayes* concluded that the entire period "from June 8, 1999, when [the defendant] filed the motion to suppress, until December 21, 2000, when the district court acted on this court's mandate" was excludable time for speedy trial purposes.[22] We are not persuaded by Bixby's reliance on *State v. Williams*.[23] In *Williams*, we held that the time excludable due to a defendant's pretrial motions, namely a plea in abatement and motion for discovery, ended on

---

[21] *Id.* at 840, 639 N.W.2d at 426.

[22] *Id.* at 841, 639 N.W.2d at 427.

[23] *State v. Williams*, 277 Neb. 133, 761 N.W.2d 514 (2009).

the day that the trial court overruled the plea. But in *Williams*, we considered the issue of excludable time for speedy trial purposes and found that an excludable period ended when the trial court overruled the defendant's plea, rather than when a journal entry was later made ordering mutual discovery. Where there was no appeal, we found that the final disposition of the defendant's motions was on the day they were granted or denied, rather than the later date when the court ordered mutual discovery.[24] *Williams* is consistent with our determination here that *unless there is no appeal*, a motion is not finally granted or determined for speedy trial purposes until an appellate court has finally decided the matter.

By choosing to appeal the denial of his plea in bar, Bixby prevented the plea in bar from having a "final disposition" until it could be heard and decided by an appellate court. Per our readings of *White IV* and *Hayes*, the 31 days between the denial of Bixby's plea in bar and the filing of an interlocutory appeal from that denial should have therefore counted against Bixby, not the State. Thus, the entire period from November 20, 2018, the day after Bixby filed his plea in bar, until August 26, 2020, the day the mandate on remand was spread on the record of the district court, is excludable. This results in a total of 31 additional excludable days.

The district court previously determined that Bixby should be brought to trial by December 29, 2020. Based on this deadline, and by excluding the additional 31 days described above, we find that the State had until January 29, 2021, to bring Bixby to trial and that the trial scheduled for January 26, 2021, would have been timely. Bixby's motion for absolute discharge was therefore filed prematurely, and the district court's order granting such motion was clearly erroneous. Accordingly, we reverse the order of the district court which granted Bixby's motion for absolute discharge and remand the cause for further proceedings.

---

[24] *Id.*

## VI. CONCLUSION

For the foregoing reasons, we reverse the order of the district court granting Bixby's motion for absolute discharge and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

FREUDENBERG, J., concurring.

I agree with and join the majority opinion but write separately because I believe Bixby invited and consented to the trial date that he complains on appeal resulted in a violation of his statutory right to a speedy trial.

At a hearing held on October 14, 2020, the State requested that the court set a date for trial. The State reminded the court of the 6-month deadline, stating that "right now we're within the six months we have from the filing of the mandate for speedy trial purposes." The State offered to be available for trial whenever the court set the date. Bixby's counsel did not comment regarding the State's speedy trial calculations, but he opposed setting a trial date at that time because certain pretrial motions had not yet been decided. The court acceded to the request of Bixby's counsel that a trial date not yet be set.

At a later hearing held October 26, 2020, the court took under advisement a motion to vacate and indicated it wished to set a date for trial. Counsel for Bixby again demurred to setting a trial date, because additional pretrial motions were not yet decided and a pretrial conference might be needed. But this time the court insisted that a date be set. When the court asked the State when the case needed to be tried by, the State reiterated its understanding that the speedy trial date would be February 26, 2021. Again, counsel for Bixby did not expressly comment on this calculation, instead stating collegially, "Do we want to do it early February?"

The court proposed an earlier trial date of January 26, 2021. Bixby's counsel responded he had been planning to be out

of town but could make that date work. The court reporter inquired again as to "the cutoff date," to which the court repeated, "February 26." Bixby's counsel then said, "January 26 is fine. I'll make it happen. I was thinking in February, but January 26."

In sum, the court and the State attempted to engage in transparent discussions with Bixby's counsel to set a date agreeable to everyone, which would not trigger statutory discharge. Bixby's counsel initially opposed setting a trial date; repeatedly made no attempt to correct the State's and the trial court's expressed understanding of when the statutory speedy trial date would run; agreed to the January 26, 2021, date, while noting he "was thinking in February"; and then he silently waited until a week before the January 26 trial date before filing a motion for absolute discharge based on the statutory right to a speedy trial.

I oppose such gamesmanship. To reiterate the reasoning of my concurring opinion in *State v. Coomes*,[1] the defendant should not be able to complain of an alleged statutory speedy trial violation the defendant was a party to. While I agree with the majority opinion that the speedy trial clock did not run, it is my opinion that a calculation of the excludable periods was not necessary. Bixby waived any objection to the statutory 6-month speedy trial period based on a trial date that was set with his active consent.

---

[1] *State v. Coomes*, 309 Neb. 749, 962 N.W.2d 510 (2021) (Freudenberg, J., concurring).