Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/01/2022 09:05 AM CDT

State of Nebraska, appellee, v.
Eric L. Ramos, appellant.
___ N.W.2d ___

Filed October 25, 2022.    No. A-21-913.

1. **Judgments: Speedy Trial: Appeal and Error.** Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.

2. **Judgments: Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.

3. **Speedy Trial.** A criminal defendant's statutory speedy trial rights are governed by Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 2016).

4. **Speedy Trial: Appeal and Error.** After a mistrial has been granted, the filing of a plea in bar tolls the speedy trial clock from the date of the initial filing until final disposition. Such tolling would include the time from the district court's decision on the motion through the filing of the mandate on remand if any interlocutory appeal is taken.

5. **Criminal Law: Venue.** Neb. Rev. Stat. § 29-1301 (Supp. 2021) provides that a court can transfer a criminal proceeding to any other district or county in the state upon motion of the defendant.

6. **Speedy Trial: Waiver.** A defendant waives the statutory right to a speedy trial under Neb. Rev. Stat. § 29-1207 (Reissue 2016) by filing an unsuccessful motion to discharge that necessitates continuing the trial beyond the 6-month period.

7. **Constitutional Law: Speedy Trial: Final Orders.** A pretrial order denying a motion for discharge on constitutional speedy trial grounds does not affect a substantial right in a special proceeding and therefore is not a final, appealable order.

8. **Appeal and Error.** When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot

commit error in resolving an issue never presented and submitted to it for disposition.

Appeal from the District Court for Johnson County: Vicky L. Johnson, Judge. Affirmed in part, and in part dismissed.

Timothy S. Noerrlinger, of Naylor & Rappl Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Pirtle, Chief Judge, and Bishop and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Eric L. Ramos appeals the order of the district court for Johnson County which overruled his motion for absolute discharge wherein he alleged violations of his statutory and constitutional rights to speedy trial. Ramos claims on appeal that the district court incorrectly calculated the speedy trial deadline for his retrial after the first trial ended in a mistrial. Upon our review, we find that Ramos' motion for absolute discharge was premature in that time remained on his speedy trial clock at the time the motion was filed. As such, although our reasoning differs from that of the district court, we do not find error in the district court's ultimate decision to deny Ramos' motion for absolute discharge on statutory grounds. We further find that we do not have jurisdiction to consider whether Ramos' constitutional speedy trial rights were violated.

## BACKGROUND

On October 19, 2017, the State filed an information charging Ramos with first degree murder, a Class I or IA felony; assault in the first degree, a Class II felony; two counts of use of a weapon to commit a felony, each a Class II felony; and tampering or destruction of evidence, a Class IV felony. In addition, the State alleged that Ramos was a habitual

criminal. Subsequently, the State amended the information by dismissing the charges of assault in the first degree and the corresponding count of use of a weapon to commit a felony. The charges alleged by the State stemmed from an incident which occurred at the Tecumseh State Correctional Institution on March 2, 2017. On that date, Ramos was an inmate at that institution.

On August 6, 2018, a jury was impaneled and the trial on Ramos' charges began. One week later, on August 13, Ramos asserted a motion for mistrial based on the conduct of one of the State's witnesses who was alleged to have violated the district court's sequestration order. The motion for mistrial was granted by the district court that same day.

On August 23, 2018, a telephonic hearing was held. A verbatim transcription of this hearing is not included in our record. However, based on other information included within a stipulation filed by the State and a subsequent order entered by the court, during this hearing, the State indicated its intention to retry Ramos. The district court then scheduled a new trial to commence on January 3, 2019. During that same telephonic hearing, Ramos apparently made an oral motion to change the venue for the rescheduled trial. One week later, on August 30, the State filed a stipulation agreeing that the trial should be moved from Johnson County. On September 5, the district court entered an order granting the motion to change the venue of the trial. The second trial was to be held in Saline County.

On November 2, 2018, prior to the scheduled start of trial, Ramos filed a plea in bar, alleging that the State should be barred from retrying him because it had engaged in prosecutorial misconduct during the first trial. Specifically, Ramos alleged that the State had intentionally provoked or goaded him into filing for a mistrial. Ramos asserted that, as a result of the State's misconduct, retrial of the case was barred by principles of double jeopardy. The district court denied Ramos' plea in bar on August 30, 2019. Ramos appealed

from the district court's decision on September 29. This court affirmed the district court's denial of the plea in bar. The district court spread our mandate on March 31, 2021. At this same time, the court appointed Ramos with new cocounsel because one of his trial attorneys had been appointed to a judgeship while Ramos' appeal from the denial of his plea in bar had been pending. The district court scheduled the new trial to commence on August 10. The State believed the trial would last 3 to 4 weeks.

On July 21, 2021, a few weeks before trial was scheduled to begin, Ramos filed a motion for absolute discharge, alleging a violation of both his statutory and constitutional rights to a speedy trial. At a hearing on the motion for discharge held on July 29, Ramos argued that the speedy trial deadline had passed on June 17. The State argued that the speedy trial deadline had not yet passed as of the filing of Ramos' motion and that therefore, the motion was premature. The district court took the matter under advisement and on October 29 issued an order denying Ramos' motion for discharge.

In the order, the district court found that the speedy trial clock should be reset to commence on March 29, 2021, which is the date the mandate from this court regarding Ramos' plea in bar was received. From March 29, the district court calculated that the new deadline to commence Ramos' trial would extend 6 months to September 29. Because trial was scheduled to begin on August 10, the district court held that Ramos' motion for discharge was premature and that his statutory and constitutional rights had not been violated. Given the district court's findings in this regard, it did not make explicit rulings on any excludable time.

Ramos appeals the district court's order which denied his motion for discharge.

ASSIGNMENTS OF ERROR

On appeal, Ramos claims that the district court erred when it overruled his motion for discharge. Specifically, he alleges

that contrary to the district court's findings, both his statutory and his constitutional rights to a speedy trial were violated. He also claims that as a result of the delay in bringing him to trial, his right to due process was violated.

## STANDARD OF REVIEW

[1] Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Bixby*, 311 Neb. 110, 971 N.W.2d 120 (2022).

[2] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *Id*.

## ANALYSIS

*Statutory Right to Speedy Trial.*

[3] A criminal defendant's statutory speedy trial rights are governed by Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 2016). As pertinent to this appeal, § 29-1207 provides, in relevant part:

(1) Every person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section.

(2) Such six-month period shall commence to run from the date the indictment is returned or the information filed . . . .

(3) If a defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, such period shall commence to run from the date of the mistrial, order granting a new trial, or the mandate on remand.

(4) The following periods shall be excluded in computing the time for trial:

(a) The period of delay resulting from other proceedings concerning the defendant, including, but not limited

to, an examination and hearing on competency and the period during which he or she is incompetent to stand trial; the time from filing until final disposition of pretrial motions of the defendant, including motions to suppress evidence, motions to quash the indictment or information, demurrers and pleas in abatement, and motions for a change of venue; and the time consumed in the trial of other charges against the defendant;

. . . .

(f) Other periods of delay not specifically enumerated in this section, but only if the court finds that they are for good cause.

Our first task is to determine when the 6-month period delineated in § 29-1207 commenced: either at the time the district court granted the mistrial or at the time our mandate issued affirming the district court's denial of Ramos' plea in bar. In its order denying Ramos' motion for absolute discharge, the district court found that the 6-month period started anew upon the issuance of our mandate affirming the court's decision to deny Ramos' plea in bar. As such, the court calculated the last day to bring Ramos to trial using the date it received our mandate, March 29, 2021, as its starting point. Subsequent to the issuance of the district court's order, the Nebraska Supreme Court addressed this issue in *State v. Bixby, supra*. Based on that opinion, we find the district court's calculation to be in error.

[4] The procedural background of *State v. Bixby, supra*, is similar to the procedural background in this case. Therein, Clay Younglove Bixby was granted a mistrial in the middle of his first trial. After being granted the mistrial, he filed a plea in bar arguing that the State should not be able to retry his case. The district court denied the plea in bar, and Bixby subsequently appealed from that decision. This court affirmed the denial of the plea in bar, and the matter was remanded back to the district court. Upon remand, a new trial date was set. Before the trial could occur, Bixby filed a motion for

absolute discharge, which was ultimately granted by the district court. In its calculations, the district court found that the new 6-month speedy trial period started upon the granting of the mistrial, not upon the issuance of our mandate regarding the plea in bar. While the Supreme Court reversed the district court's decision to grant Bixby's motion for absolute discharge, it accepted that portion of the district court's speedy trial calculation which restarted the 6-month period upon the grant of the mistrial. The Supreme Court held that the filing of the plea in bar merely tolled the speedy trial clock from the first date of filing until the mandate on remand was issued after Bixby's interlocutory appeal. As such, Bixby's appeal from the denial of his plea in bar and our subsequent mandate did not affect the date that the 6-month period began to run.

Applying the Supreme Court's holding in *State v. Bixby*, 311 Neb. 110, 971 N.W.2d 120 (2022), to the facts of this case, we find that the 6-month speedy trial period commenced on August 13, 2018, the day the district court granted Ramos' motion for a mistrial. Excluding that day, counting forward 6 months, and backing up 1 day, the State was required to retry Ramos on or before February 13, 2019, unless additional excludable time periods were proved.

We first apply the holding of *State v. Bixby, supra*, to the plea in bar filed herein. The speedy trial clock was tolled from November 2, 2018, when Ramos filed his plea in bar, through March 31, 2021, when our mandate was spread in the district court. Accordingly, 880 days were excludable from the 6-month speedy trial period. Adding those 880 excludable days to February 13, 2019, the new speedy trial deadline was July 13, 2021.

We note that the 880 days excluded includes the 29 days which elapsed from the date the district court overruled the plea in bar until Ramos filed his notice of appeal. In his brief, Ramos argues that these 29 days should not be excludable and should count against the State. However, in *State v. Bixby,*

*supra*, decided shortly after Ramos' brief was filed herein, the Supreme Court directly addressed this issue and found that the time which ran from the date the plea in bar was overruled until the date Bixby filed his notice of appeal was excluded for purposes of the statutory speedy trial calculation. The court found that by choosing to appeal the denial of the plea in bar, Bixby prevented any "final disposition" of the issues raised therein. As a result, the entirety of the time from the original filing of the plea in bar until our mandate was spread upon the district court record was excludable.

The State and Ramos agree that there is a second excludable time period surrounding the motion to change the venue of the trial. However, the parties disagree on the amount of time that should be excluded. The State asserts that the excludable time began on August 23, 2018, when, according to the State, Ramos made an oral motion to change venue during a telephonic hearing. To the contrary, Ramos asserts that the excludable time began on August 30, when the State filed its stipulation to change venue. The parties agree that the excludable period ended on September 5, when the court entered its order granting the change of venue.

[5] As we noted above, there is no verbatim transcription from the August 23, 2018, telephonic hearing which definitively informs us whether Ramos made an oral motion to change the venue. However, in the stipulation filed by the State on August 30, counsel for the State recited that Ramos, through counsel, had renewed the motion to change venue during the course of the August 23 conference call. Then, in the district court's order overruling Ramos' motion for absolute discharge, it explicitly states that Ramos "renewed his previous Motion for a Change of Venue on August 23, 2018." The court goes on to find that Ramos' request for a change in venue was followed by the State's stipulation to the change in venue which was filed on August 30. The district court's recitation that Ramos renewed his motion for a change in venue prior to the State's filing of the stipulation would conform to

the procedure outlined in Neb. Rev. Stat. § 29-1301 (Supp. 2021). That statute provides that a court can transfer a criminal proceeding to any other district or county in the state "upon motion of the defendant." The language of § 29-1301 does not provide the State with the ability to request a change in venue. The right is granted solely to the defendant.

Given the district court's explicit finding that Ramos renewed his previous motion to change venue during the telephonic hearing on August 23, 2018, and the language of § 29-1301, which provides that only a defendant can motion for a change in venue, we are compelled to conclude that Ramos did, in fact, make an oral motion for a change of venue on August 23. In so concluding, we note that after the State filed its stipulation to the change in venue, Ramos never contradicted the State's claim that he had previously motioned for the change in venue. As such, the time from August 23, when Ramos made his motion for a change in venue, through September 5, when the district court granted the motion for a change in venue, is excluded from the speedy trial clock. Adding those 14 additional excludable days to July 13, 2021, the new speedy trial deadline was July 27.

Ramos filed his motion for absolute discharge on July 21, 2021, prior to the time the speedy trial deadline had passed and, thus, prematurely. Because we find that Ramos' motion for absolute discharge was prematurely filed based on the excludable periods resulting from Ramos' plea in bar and his motion for change in venue, we need not address whether any other excludable periods are present.

[6] We affirm the judgment of the district court overruling Ramos' motion for absolute discharge, albeit for different reasons. See *State v. Huff*, 279 Neb. 68, 776 N.W.2d 498 (2009) (where record adequately demonstrates that decision of trial court is correct—although such correctness is based on ground or reason different from that assigned by trial court—an appellate court will affirm). Ramos has now waived his statutory right to a speedy trial under § 29-1207 by filing an

unsuccessful motion to discharge that necessitated continuing the trial beyond the 6-month period. See *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014).

*Constitutional Right to Speedy Trial.*

[7] On appeal, Ramos also claims that the district court erred in denying his motion for speedy trial based upon constitutional grounds. Specifically, Ramos asserts that the delays in bringing him to trial violated his constitutional right to a speedy trial. The Supreme Court recently held in *State v. Abernathy*, 310 Neb. 880, 891, 969 N.W.2d 871, 879 (2022), that "a pretrial order denying a motion for discharge on constitutional speedy trial grounds does not affect a substantial right in a special proceeding for purposes of [Neb. Rev. Stat.] § 25-1902(1)(b) [(Cum. Supp. 2020)]." We therefore lack appellate jurisdiction to review Ramos' claim that he was entitled to absolute discharge on constitutional speedy trial grounds, and we dismiss that part of the appeal.

*Right to Due Process.*

[8] In his brief on appeal, Ramos asserts that he was denied his constitutional right to due process as a result of the State's delay in bringing him to trial. We note that Ramos' ability to prove any due process violation is questionable given our finding that his statutory right to a speedy trial has not been violated. Ultimately, however, we need not further discuss Ramos' due process claim, as he did not raise this issue in the district court. When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. See, e.g., *State v. Heng*, 25 Neb. App. 317, 905 N.W.2d 279 (2017).

CONCLUSION

For the foregoing reasons, we affirm the order of the district court which overruled Ramos' motion for absolute

discharge on statutory speedy trial grounds. Time remained on the speedy trial clock when Ramos filed his motion for discharge. We lack appellate jurisdiction to review Ramos' claim that he was entitled to absolute discharge on constitutional speedy trial grounds, and we therefore dismiss that part of the appeal.

Affirmed in part, and in part dismissed.