Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

ERIC CANO, APPELLEE, V. MICHAEL WALKER, APPELLANT,
AND BILLY E. CLABORN, JR., APPELLEE.

___ N.W.2d ___

Filed September 1, 2017.    No. S-16-634.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
2. **Contracts.** Contract interpretation presents a question of law.
3. **Judgments: Appeal and Error.** Appellate courts independently review questions of law decided by a lower court.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
5. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), there are three types of final orders which may be reviewed on appeal: (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.
6. ____: ____. Numerous factors determine when an order affects a substantial right for purposes of appeal. Broadly, these factors relate to the importance of the right and the importance of the effect on the right by the order at issue. It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial. Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.
7. **Jurisdiction: Time: Notice: Appeal and Error.** Under Neb. Rev. Stat. § 25-1912 (Reissue 2016), to vest an appellate court with jurisdiction, a party must timely file a notice of appeal within 30 days of the judgment, decree, or final order from which the party is appealing.
8. **Debtors and Creditors: Releases.** The voluntary release of one joint debtor operates as a release of his or her codebtors.

9. **Promissory Notes: Releases.** The unconditional release of one of several makers of a joint and several promissory note, without the consent of the other makers thereof, operates as a release of all.

10. **Contracts: Releases.** Under the common-law rule as it has developed in Nebraska, the qualifiers that releases must be "voluntary" and "unconditional" require consideration of general principles of contract interpretation when determining whether the common-law rule is applicable. Generally, the question is whether the language of the release at issue is unqualified such that it amounts to a complete satisfaction of the debt, or whether the language of the release is qualified such that it operates as merely a partial satisfaction of the debt.

11. **Releases.** The general rule of law is that a promise to release does not take effect until the agreed promise is completed.

12. **Judgments: Debtors and Creditors: Releases.** A judgment creditor may make a valid and binding agreement, either at the time a judgment is entered or later, to release and satisfy the judgment on terms other than receiving full payment of its amount. If the agreement to release or satisfy is executory, there is no release of the judgment until it is performed. The corollary to this rule is that once the relevant promises are performed, the agreement to release becomes effective.

13. **Courts.** The doctrine of stare decisis forms the bedrock of Nebraska's common-law jurisprudence.

14. **Courts: Appeal and Error.** The doctrine of stare decisis does not require appellate courts to blindly perpetuate a prior interpretation of the law if it was clearly incorrect, but it is entitled to great weight and requires that the courts adhere to their previous decisions unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.

15. **Courts: Public Policy: Appeal and Error.** The doctrine of stare decisis is grounded in the public policy that the law should be stable, fostering both equality and predictability of treatment. By requiring appellate courts to adhere to their previous decisions in most circumstances, the doctrine of stare decisis promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Reversed and remanded with directions.

Warren R. Whitted, Jr., and Keith A. Harvat, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellant.

Larry R. Forman, of Hillman, Forman, Childers & McCormack for appellee Eric Cano.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

STACY, J.

This is an appeal from an order denying a motion to discharge judgment filed by one of two judgment debtors who were co-obligors on a promissory note. The issues raised by the parties require us to consider the applicability, and continued viability, of the common-law rule in contracts that "'[t]he unconditional release of one of several makers of a joint and several promissory note, without the consent of the other makers thereof, operates as a release of all.'"[1] We conclude the rule represents settled law in Nebraska, and we find it should have been applied by the district court in this case. Accordingly, we reverse, and remand with directions to discharge the judgment.

## I. FACTS

Eric Cano filed suit against Michael Walker and Billy E. Claborn, Jr., in October 2012, alleging they had failed to pay amounts due on a promissory note executed in April 2007. Cano prayed for judgment against them "jointly and severally" in the amount of $299,500, plus interest and penalties. All parties agree the promissory note imposed joint and several liability on Walker and Claborn.

Cano moved for summary judgment in October 2013. The matter was heard on November 12. At the hearing, Cano represented that the amounts due on the note were $299,500 in principal, a late charge of $14,975, and interest of $72,958.20, for a total of $387,433.20. On November 20,

---

[1] *Bankers Life Ins. Co. v. Ohrt*, 131 Neb. 858, 862, 270 N.W. 497, 500 (1936). See, *Coleman v. Beck*, 142 Neb. 13, 5 N.W.2d 104 (1942); *Lamb v. Gregory*, 12 Neb. 506, 11 N.W. 755 (1882); *3's Lounge v. Tierney*, 16 Neb. App. 64, 741 N.W.2d 687 (2007).

the court entered summary judgment in favor of Cano and against both Walker and Claborn for $387,433.20.

Cano did not tell the court at the summary judgment hearing that he and Claborn had entered into a "Stipulation" on November 11, 2013, without Walker's knowledge. According to the terms of the stipulation, Claborn agreed to entry of judgment against him for the full amount due on the note, and agreed to pay $40,000 immediately and an additional $127,000 by June 2, 2014. Claborn also agreed to provide a new furnace and an air-conditioning unit for Cano's residence in Omaha, Nebraska, on or before December 13, 2013. The parties later agreed this was worth approximately $10,000. In exchange for these payments and services, Cano agreed not to execute on the judgment against Claborn so long as he complied with the stipulation, and further agreed that "[u]pon satisfaction by Claborn with the terms [of the stipulation], Cano shall forthwith release Claborn completely from such judgment . . . ."

After the court entered judgment on the promissory note, Cano attempted to execute on the judgment against Walker in various ways, representing that Walker owed the full amount of the judgment. Walker actively avoided the execution attempts and was held in contempt of court at least once.

On July 17, 2014, Cano filed what he captioned a "Satisfaction" in the case, which stated in full: "COMES NOW the Plaintiff and shows the Court that the Defendant Billy E. Claborn, Jr. has fully satisfied the Judgment against him in the above-captioned case, provided that the Judgment entered herein against Defendant Michael Walker remains unsatisfied." After filing this satisfaction, Cano continued his attempts to collect the judgment from Walker, and Walker continued to evade collection efforts.

In November 2015, Cano attempted once again to collect the judgment against Walker by seeking an order in aid of execution from the court. Walker filed an objection, raising for the first time the argument that satisfaction of the

judgment against Claborn operated to satisfy the judgment against Walker as well.

During the hearing on Walker's objection to Cano's request for an order in aid of execution, the parties argued about the legal effect of the satisfaction Cano had filed. Cano argued the satisfaction operated only as against Claborn, because it stated the judgment "remain[ed] unsatisfied" as against Walker. Walker relied on Nebraska case law holding that "'[t]he unconditional release of one of several makers of a joint and several promissory note, without the consent of the other makers thereof, operates as a release of all.'"[2]

The court commented that based on the court record, it appeared the entire judgment had been paid. In response to this comment, Cano's counsel, for the first time, informed the court and Walker he had made a "deal" with Claborn to pay $167,000 "in exchange for a release." Upon learning of the agreement and release, the court informed Cano that the order in aid of execution would be denied and that further proceedings were necessary.

Thereafter, Walker filed a motion to discharge the judgment, premised on the common-law rule that the release of one joint obligor on a promissory note operates to release all. After holding an evidentiary hearing, the district court overruled Walker's motion for discharge, but exercised its inherent authority to reduce the amount of the judgment by $40,000—the amount the record showed Claborn had paid to Cano before the summary judgment was entered on the full amount of the promissory note.

Walker filed this timely appeal, and we moved the case to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[3]

---

[2] *Id.*

[3] Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## II. ASSIGNMENTS OF ERROR

Walker assigns, restated and consolidated, that the district court erred in (1) finding the stipulation between Cano and Claborn did not release both Walker and Claborn from the judgment; (2) finding the satisfaction filed in July 2014 did not satisfy the judgment entered against both Walker and Claborn; (3) determining it had the inherent power to change the amount of the judgment entered on November 20, 2013; and (4) failing to discharge the judgment against Walker.

## III. STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[4]

[2] Contract interpretation presents a question of law.[5]

[3] Appellate courts independently review questions of law decided by a lower court.[6]

## IV. ANALYSIS

### 1. Jurisdictional Arguments

[4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[7] Cano presents two jurisdictional challenges in his brief. He argues that Walker has not appealed from a final order under Neb. Rev. Stat. § 25-1902 (Reissue 2016), and he argues that the appeal was untimely filed under Neb. Rev. Stat. § 25-1931 (Reissue 2016). We address each argument in turn.

---

[4] *Ginger Cove Common Area Co. v. Wiekhorst*, 296 Neb. 416, 893 N.W.2d 467 (2017).

[5] *Beveridge v. Savage*, 285 Neb. 991, 830 N.W.2d 482 (2013); *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

[6] *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

[7] *In re Guardianship & Conservatorship of Barnhart*, 290 Neb. 314, 859 N.W.2d 856 (2015); *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015).

### (a) Finality Under § 25-1902

[5] Under § 25-1902, there are three types of final orders which may be reviewed on appeal: (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.[8] Walker filed this appeal from the district court's May 26, 2016, order overruling his motion to discharge the judgment. That order is properly characterized as one made on summary application after judgment is rendered, and we focus on whether that order affected a substantial right.[9]

[6] Numerous factors determine when an order affects a substantial right for purposes of appeal. Broadly, these factors relate to the importance of the right and the importance of the effect on the right by the order at issue.[10] It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[11] Whether the effect of an order is substantial depends on "'''''whether it affects with finality the rights of the parties in the subject matter.'''''"[12]

Cano argues that because the order denying discharge also resulted in the judgment against Walker being reduced by $40,000, it was actually beneficial to Walker and therefore did not affect a substantial right. This argument ignores the nature of the relief Walker was seeking—to be fully discharged from the judgment. To the extent the district court denied that relief in overruling Walker's motion for discharge, we find the order affected a substantial right and was a final, appealable order.

---

[8] *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017).

[9] § 25-1902.

[10] *In re Interest of Noah B. et al., supra* note 8.

[11] *Id.*

[12] *Id*. at 774, 891 N.W.2d at 119.

### (b) Timeliness of Appeal

[7] Cano presents two arguments that Walker's appeal was untimely. Both arguments misstate the record, and addressing them in detail is unnecessary. Under Neb. Rev. Stat. § 25-1912 (Reissue 2016), to vest an appellate court with jurisdiction, a party must timely file a notice of appeal within 30 days of the judgment, decree, or final order from which the party is appealing.[13] Here, Walker filed his notice of appeal within 30 days of the court's order overruling his motion to discharge the judgment. This appeal was timely filed, and Cano's arguments to the contrary are meritless.

### 2. NEBRASKA COMMON LAW REGARDING RELEASE OF JOINT DEBTORS IN CONTRACT

[8,9] In the area of contracts, Nebraska has long followed the common-law rule that the "'voluntary release'" of one joint debtor operates as a release of his or her codebtors.[14] It is well settled that "'[t]he unconditional release of one of several makers of a joint and several promissory note, without the consent of the other makers thereof, operates as a release of all.'"[15]

The question presented in this appeal is whether, on the facts of this case, the common-law rule applies. The answer to that question turns on whether the stipulation between Cano and Claborn, and/or the subsequent satisfaction of judgment, represented an unconditional and voluntary release of Claborn. If so, then under the common-law rule, Walker was also released.

Over the years, this court has used the terms "voluntary" and "unconditional" when referencing the common-law rule

---

[13] *Clarke, supra* note 6.

[14] *Coleman, supra* note 1, 142 Neb. at 17, 5 N.W.2d at 106. Accord *Lamb, supra* note 1.

[15] *Bankers Life Ins. Co., supra* note 1, 131 Neb. at 862, 270 N.W. at 500. See, *Farmers State Bank v. Baker*, 117 Neb. 29, 219 N.W. 580 (1928); *Huber Mfg. Co. v. Silvers*, 85 Neb. 760, 124 N.W. 148 (1910).

regarding releases of co-obligors,[16] but we have not defined those terms. Our use of these terms in describing the common-law rule appears to be unique; general sources citing the common-law rule do not contain the qualifiers "voluntary" or "unconditional."[17] Instead, the common-law rule is simply that a release of one joint obligor releases all.[18]

[10] We understand the qualifiers in our recitation of the common-law rule to require consideration of general principles of contract interpretation when determining whether the common-law rule is applicable. Generally, the question is whether the language of the release at issue is unqualified such that it amounts to a complete satisfaction of the debt, or whether the language of the release is qualified such that it operates as merely a partial satisfaction of the debt.[19] We review our prior decisions to illustrate the application of the common-law rule as it has developed in Nebraska.

We first applied the common-law rule in 1882, in *Lamb v. Gregory*.[20] There, the plaintiff obtained a deficiency judgment against two debtors. One of the debtors moved to have the judgment set aside as to him because it was discharged in bankruptcy. The plaintiff agreed "'to the setting aside of the judgment'" against that debtor, and it was set aside.[21] Later, the other debtor moved to be discharged from the judgment, arguing the release of the first debtor operated as a release of both from liability on the judgment. We agreed, citing the rule that "'[i]f two or more are jointly bound, or jointly and

---

[16] See, *Coleman, supra* note 1; *Bankers Life Ins. Co., supra* note 1; *Lamb, supra* note 1.

[17] See, generally, Annot., 53 A.L.R. 1420 (1928).

[18] *Id.* See, also, *Schiffer v. United Grocers, Inc.*, 329 Or. 86, 989 P.2d 10 (1999).

[19] See *Bankers Life Ins. Co., supra* note 1. See, generally, 53 A.L.R., *supra* note 17 (noting that courts will look at parties' intentions when construing release and that express reservation of rights can avoid common-law rule).

[20] *Lamb, supra* note 1.

[21] *Id.* at 507, 11 N.W. at 755.

severally bound, and the obligee releases one of them, all are discharged.'"[22]

In *Huber Mfg. Co. v. Silvers*,[23] the plaintiff sued on five promissory notes, signed jointly by three debtors. The notes were given by the debtors for the purchase from the plaintiff of a steam thresher separator. After the notes were executed, one of the three debtors, John Silvers, went to the plaintiff and represented that he had sold his interest in the threshing outfit to the others and that they had assumed and agreed to pay the notes. The plaintiff, without investigating the veracity of this claim, agreed to release Silvers from the notes and sell him another threshing machine. The terms of the release were that Silvers was "'"released without recourse"'" from the notes.[24] Noting the record was unclear as to Silvers' veracity, we applied the common-law rule to hold, with "great reluctance," that the release of Silvers operated as a release of all debtors on the notes.[25]

In *Farmers State Bank v. Baker*,[26] four parties were jointly liable on promissory notes. Through a complicated arrangement, one of the parties was released from liability on the notes. Although that release did not appear to contemplate or intend any release of the others, we nevertheless held that the release of one of several makers of a joint and several promissory note, without the consent of the others, operated as a release of all.

In *Bankers Life Ins. Co. v. Ohrt*,[27] the holder sued five makers of a note and mortgage. At the beginning of the trial, the holder stated that he "'waive[d] personal liability of the

---

[22] *Id.* at 508, 11 N.W. at 755.

[23] *Huber Mfg. Co., supra* note 15.

[24] *Id.* at 761, 124 N.W. at 148.

[25] *Id.* at 765, 124 N.W. at 149.

[26] *Farmers State Bank, supra* note 15.

[27] *Bankers Life Ins. Co., supra* note 1.

defendant Rosa Oft'" on the note and mortgage.[28] Later, counsel withdrew that waiver on the record. On appeal, the other four makers argued this was an unconditional release of Rosa Oft and operated as a release of all of them as well. We disagreed, and found the release did not apply to all. We reasoned the evidence did not show the release was unconditional, because the statement was not that Oft was "released from all effects of the note and mortgage," but merely that the plaintiff had waived Oft's "personal liability."[29] We also found it significant that the waiver had been withdrawn.

In *Coleman v. Beck*,[30] a husband and wife executed a promissory note and a mortgage. They later sold the real property encumbered by the mortgage to Lyle Trumbley, who assumed payment of the mortgage. The real estate was foreclosed upon, and a deficiency judgment was entered against the husband, the wife, and Trumbley. The bank then released the husband and wife from the judgment, and Trumbley argued on appeal that the release operated to release him as well. We held the common-law rule did not apply, because Trumbley, who had assumed the promissory notes, was not a joint debtor on the notes with the husband and wife. Rather, he was the surety on the mortgage debt, and we concluded that a release of the husband and wife did not affect his liability.

With these holdings in mind, we consider the relevant documents in the present case.

### 3. RELEASE DOCUMENTS

#### (a) Stipulation

The stipulation between Cano and Claborn provided in relevant part:

> Notwithstanding entry of the judgment against Claborn as aforesaid, Cano covenants that he shall take no steps to

---

[28] *Id*. at 862, 270 N.W. at 500.

[29] *Id.*

[30] *Coleman, supra* note 1.

execute on such judgment and that he shall take no action against Claborn with respect to said judgment so long as Claborn complies with the terms of this Stipulation. Upon satisfaction by Claborn with the terms hereof, Cano shall forthwith release Claborn completely from such judgment and from any liability for any amounts in excess of the amounts required from Claborn as set forth herein.

[11] The plain language of this stipulation provided that Cano would not take any action on the judgment against Claborn while Claborn's promise to pay the agreed amounts remained executory, but that once Claborn's promise was completed, Claborn would be released "completely." This interpretation is consistent with the general rule of law that a promise to release does not take effect until the agreed promise is completed.[31]

We find the plain and unambiguous language of this stipulation operated as an unconditional and voluntary release of Claborn as soon as he satisfied its terms. Our record does not reveal the precise date on which Claborn satisfied the terms of the stipulation, but there is no dispute that he did so, prompting Cano to file the satisfaction of judgment which we consider next.

(b) Satisfaction

The satisfaction Cano filed in this case recited that Claborn had "satisfied the Judgment against him" and further recited that "the Judgment entered herein against . . . Walker remains unsatisfied." Cano argues that the qualifying language of the satisfaction reserved Walker's liability and prevented the unconditional release of Claborn from operating as a release of Walker.

[12] But we conclude the relevant and operative release language is found in the stipulation, not the satisfaction. A

---

[31] 50 C.J.S. *Judgments* § 892 (2009).

judgment creditor may make a valid and binding agreement, either at the time a judgment is entered or later, to release and satisfy the judgment on terms other than receiving full payment of its amount.[32] If the agreement to release or satisfy is executory, there is no release of the judgment until it is performed.[33] The corollary to this rule is that once the relevant promises are performed, the agreement to release becomes effective.[34] So, once the terms of the stipulation were met in this case, Claborn was fully and unconditionally released. The qualifying language recited later in the satisfaction of judgment was irrelevant.

## 4. Releases of Joint Tort-feasors Are Governed by Different Rules

In his briefing on appeal, Cano relies rather extensively on Nebraska law addressing joint liability in tort and the effect of releasing one of several joint tort-feasors. Because Nebraska statutes and case law treat joint tort-feasors differently than co-obligors on a contract or judgment, the rules governing release of joint tort-feasors are not instructive in the present case.

## 5. Continued Viability of Common-Law Rule

Cano urges this court to abolish the common-law rule that the unconditional release of one of several co-obligors on a note, without the consent of the others, operates as a release of all. Nebraska is among a minority of jurisdictions to continue applying the common-law rule. Of those jurisdictions that have abolished the rule, most have done so through legislative action rather than judicial decision.[35]

---

[32] *Id.*

[33] *Id.*

[34] See *id.*

[35] See, e.g., *Schiffer, supra* note 18 (including appendix listing how each state treats issue).

[13-15] The doctrine of stare decisis forms the bedrock of our common-law jurisprudence.[36] While it does not require us to blindly perpetuate a prior interpretation of the law if we conclude it was clearly incorrect,[37] it is entitled to great weight[38] and requires that we adhere to our previous decisions "unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so."[39] The doctrine "is grounded in the public policy that the law should be stable, fostering both equality and predictability of treatment."[40] By requiring appellate courts to adhere to their previous decisions in most circumstances, the doctrine of stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."[41]

The common-law rule in contracts—that an unconditional release of one joint obligor without the consent of the others operates to release all—has governed business decisions and contractual arrangements in Nebraska for more than a century. The rule is predictable, easy to understand, and easy to apply. Moreover, at least as it has developed in Nebraska, the common-law rule includes the unique requirements that a release of one joint debtor must be both "voluntary" and "unconditional" before the rule operates to release all joint debtors. So if individuals and businesses want to structure releases in a way that avoids the consequences of the rule, it is clear how to do so.

---

[36] *Holm v. Holm*, 267 Neb. 867, 678 N.W.2d 499 (2004).

[37] *Id.*

[38] *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016).

[39] *Id.* at 247, 883 N.W.2d at 47-48.

[40] *State v. Hausmann*, 277 Neb. 819, 828, 765 N.W.2d 219, 226 (2009).

[41] *Michigan v. Bay Mills Indian Community*, ___ U.S. ___, 134 S. Ct. 2024, 2036, 188 L. Ed. 2d 1071 (2014) (citations omitted).

We see no principled reason to depart from this settled precedent, and we decline Cano's invitation to abolish the common-law rule in Nebraska. If the settled common law is to be amended or abolished, that action should be undertaken by the Legislature rather than the judiciary.

## V. CONCLUSION

Under settled Nebraska contract law, the unconditional release of one of several joint obligors on a promissory note, without the consent of the other obligors, operates as a release of all. Walker and Claborn were co-obligors on a promissory note that was reduced to a judgment. Without the consent of Walker, Cano and Claborn entered into a stipulation which operated as an unconditional release of Claborn once he satisfied the terms of the stipulation.

As such, under the common-law rule in Nebraska, the unconditional release of Claborn from the judgment operated as a release of Walker. Because the district court erred in denying Walker's motion to discharge the judgment against him, we reverse, and remand with directions to grant the requested discharge.

Reversed and remanded with directions.