Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/30/2026 09:08 AM CST

State of Nebraska, appellant, v.
Trevor M. Jones, appellee.

___ N.W.3d ___

Filed January 30, 2026.    No. S-25-125.

1. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.
2. **Criminal Law: Judgments: Jurisdiction: Appeal and Error.** In the absence of specific statutory authorization, the State, as a general rule, has no right to appeal an adverse ruling in a criminal case.
3. **Criminal Law: Final Orders: Jurisdiction: Appeal and Error.** A failure to strictly comply with the jurisdictional prerequisites of Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2024) prevents the State from obtaining any review of a trial court's final order in a criminal case.
4. **Courts: Appeal and Error.** The doctrine of stare decisis does not require appellate courts to blindly perpetuate a prior interpretation of the law if it was clearly incorrect, but it is entitled to great weight and requires that the courts adhere to their previous decisions unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so.

Petition for further review from the Court of Appeals, Moore, Bishop, and Welch, Judges, on appeal thereto from the District Court for Lancaster County, Susan I. Strong, Judge. Judgment of Court of Appeals affirmed.

Michael T. Hilgers, Attorney General, Zachary A. Viglianco, and Cody S. Barnett, for appellant.

Michael J. Wilson and Mallory N. Hughes, of Berry Law Firm, for appellee.

FUNKE, C.J., CASSEL, STACY, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

In this case, we address a somewhat arcane question of appellate procedure: Could the State of Nebraska obtain appellate review of a district court order granting a criminal defendant's motion for absolute discharge on statutory speedy trial grounds by filing an ordinary appeal pursuant to Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2024)? Or was it instead required to pursue an exception proceeding under Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2024)? We conclude that under the circumstances, the State was obligated to pursue an exception proceeding under § 29-2315.01. Because it did not follow the procedures required to do so here, we affirm the order of the Nebraska Court of Appeals dismissing the State's appeal.

## I. BACKGROUND

### 1. PROCEEDINGS IN DISTRICT COURT

The question of appellate procedure before us arises out of the State's prosecution of Trevor M. Jones. In November 2023, the State charged Jones with theft by deception, $5,000 or more.

About a year after he was charged, Jones filed a motion for absolute discharge. In it, he asserted that the State had failed to bring him to trial within the time required by Nebraska's speedy trial statute, see Neb. Rev. Stat. § 29-1207 (Reissue 2016), and that accordingly, he should receive absolute discharge from the alleged offense, see Neb. Rev. Stat. § 29-1208 (Reissue 2016). The district court held a hearing on the motion. Following the hearing, the district court determined that Jones' speedy trial rights had indeed been violated. The district court entered an order sustaining his motion for absolute discharge.

Displeased with the district court's order, the State attempted to challenge it in the appellate courts. It did so by filing a notice of appeal in the district court within 30 days of the district court's order. Importantly for purposes of this opinion, however, the State did not follow the procedures necessary to obtain review under § 29-2315.01. That statute authorizes the State to obtain review of "any ruling or decision of the court made during the prosecution of a cause" through what are sometimes referred to as "exception proceedings," see, e.g., *State v. Lewis*, 319 Neb. 847, 25 N.W.3d 421 (2025), or "error proceedings," see, e.g., *State v. Warner*, 290 Neb. 954, 863 N.W.2d 196 (2015). The State instead merely filed a notice of appeal in the district court.

## 2. Proceedings in Court of Appeals

The State's appeal was docketed in the Court of Appeals. Shortly thereafter, the Court of Appeals entered an order to show cause. In it, the Court of Appeals noted that the record before it did not demonstrate that the State had followed the requirements to commence an exception proceeding set forth in § 29-2315.01. The Court of Appeals directed the State to demonstrate why the appeal should not be dismissed for lack of jurisdiction.

In its response to the order to show cause, the State acknowledged that it had not followed the steps necessary to obtain review under § 29-2315.01, but it asserted that it was not required to do so. The State contended that rather than pursuing an exception proceeding, it was seeking review of the district court's order pursuant to § 25-1912, the general statute setting forth the procedure for obtaining appellate review of a final order entered in the district court. The State argued that it was entitled to pursue an ordinary appeal under § 25-1912 because it was appealing from a final order, specifically an order affecting a substantial right made during a special proceeding. See Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2024).

After the State submitted its response to the order to show cause, Jones filed a motion for summary dismissal pursuant to Neb. Ct. R. App. P. § 2-107(B)(1) (rev. 2022). Jones argued that the State was attempting to obtain review of an adverse ruling in a criminal case and that to do so, it was required to comply with § 29-2315.01. Because it had not done so, Jones contended the Court of Appeals lacked jurisdiction.

Before the State's time to respond to Jones' motion for summary dismissal had expired, see § 2-107(B)(4), the Court of Appeals sustained Jones' motion for summary dismissal. The Court of Appeals' minute entry sustaining Jones' motion stated that the State's "attempt to file a direct appeal in a criminal case failed to comply with § 29-2315.01." In support, the Court of Appeals cited *State v. Johnson*, 259 Neb. 942, 613 N.W.2d 459 (2000) (*Johnson*), which it characterized as holding that the "failure to strictly comply with . . . § 29-2315.01 prevents State from obtaining review of trial court's final order in [a] criminal case."

The State filed a motion for rehearing in the Court of Appeals. In addition to arguing that the Court of Appeals' dismissal was wrong on its merits, the State argued that the Court of Appeals erred by granting Jones' motion before the State's time to respond had expired.

The Court of Appeals overruled the State's motion for rehearing. Its minute entry overruling the State's motion noted that the State had the opportunity to be heard regarding the jurisdictional issue both in its response to the order to show cause and again in its motion for rehearing.

We granted the State's petition for further review.

## II. ASSIGNMENTS OF ERROR

In its petition for further review, the State assigns two errors. It contends the Court of Appeals erred (1) by dismissing the State's appeal for failure to complete the steps necessary to obtain review under § 29-2315.01 and (2) by granting

Jones' motion for summary dismissal before the State's time to respond had expired.

## III. STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *State v. A.D.*, 305 Neb. 154, 939 N.W.2d 484 (2020).

## IV. ANALYSIS

### 1. Correct Vehicle: Exception Proceeding or Ordinary Appeal?

The central question before us in this petition for further review is whether the State was required to complete the steps necessary to initiate an exception proceeding pursuant to § 29-2315.01 or whether it could obtain review of the district court's order granting Jones absolute discharge by simply perfecting an ordinary appeal pursuant to § 25-1912. Before turning to the parties' arguments on this question, we provide some relevant background regarding limits on the State's right to appeal in criminal cases.

### (a) Limits on State's Right to Appeal in Criminal Cases

[2] This court has recognized on many occasions that in the absence of specific statutory authorization, the State, as a general rule, has no right to appeal an adverse ruling in a criminal case. See, e.g., *State v. Baird*, 238 Neb. 724, 472 N.W.2d 203 (1991). Section 29-2315.01, however, specifically authorizes the State to seek appellate review of adverse rulings in criminal cases. See *State v. Johnson*, 259 Neb. 942, 613 N.W.2d 459 (2000).

But while § 29-2315.01 provides the State with a right of review in criminal cases, it also sets forth special procedures the State must follow to obtain such review. See *Johnson,*

*supra*. For example, § 29-2315.01 requires the State to, within 20 days of the ruling it wishes to challenge, file an application with the trial court to "take exception" to that ruling. After obtaining the signature of the trial judge, the State must then present the application to the appellate court. If the application is granted by the appellate court, the State must then "proceed to obtain a review of the case as provided in section 25-1912." See § 29-2315.01. There is no dispute the State did not follow these procedures in this case.

[3] A failure to strictly comply with the jurisdictional prerequisites of § 29-2315.01 prevents the State from obtaining any review of a trial court's final order in a criminal case. *Johnson, supra*. Put another way, the State cannot, in a criminal case, ignore the provisions of § 29-2315.01 and obtain review "simply by filing a notice of appeal under the provisions of the general appeal statute." *State v. Baird*, 238 Neb. at 726, 472 N.W.2d at 205. See, also, *State v. Merrill*, 273 Neb. 583, 731 N.W.2d 570 (2007) (dismissing appeal in criminal case brought pursuant to general appeal statutes).

## (b) Parties' Positions

We do not understand the parties to dispute any of the limits on the State's right to appeal in criminal cases that we have just discussed. Instead, the parties' dispute centers on whether those limits have any application in this case. Jones contends that the Court of Appeals was correct to conclude that because this is a criminal case, the State could obtain review only by complying with the requirements of § 29-2315.01.

The State sees things differently. The State acknowledges, as it must, that its *prosecution* of Jones was criminal in nature. It takes the position, however, that the proceedings regarding Jones' *motion for absolute discharge* were not criminal, but civil. The State reaches this conclusion by first correctly observing that this court has held that, when a district court enters an order resolving a motion for discharge on statutory speedy trial grounds, it does so in a special proceeding for

purposes of § 25-1902(1)(b). See *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997). The State goes on to argue that special proceedings are inherently civil in nature. It follows, the State asserts, that the district court's order granting Jones absolute discharge was not actually entered in a criminal case and thus, the State could challenge the order via an ordinary appeal pursuant to § 25-1912.

(c) Precedent

Both parties invoke precedent from this court in favor of their respective positions. We begin our analysis there.

As noted above, the Court of Appeals cited *Johnson, supra*, in its minute entry dismissing the State's appeal. In *Johnson*, as here, a district court granted a criminal defendant's motion for absolute discharge on statutory speedy trial grounds, and, as here, the State wished to challenge that decision. In *Johnson*, the State attempted to initiate an exception proceeding pursuant to § 29-2315.01, but it failed to comply with some of the mandatory provisions of that statute. We concluded that we lacked jurisdiction because of the State's failure to comply with the requirements of § 29-2315.01.

We concluded in *Johnson* that the order granting absolute discharge was entered in a criminal case and that therefore, the State was required to seek review under § 29-2315.01. We said that § 29-2315.01 "grants the State the right to seek Supreme Court review of adverse criminal rulings *such as those involved in this case*, and specifies the special procedure by which to obtain such review." *Johnson*, 259 Neb. at 945, 613 N.W.2d at 462 (emphasis supplied). We also said that "[b]ecause the right of the State to appeal from a final order *in a criminal case* is limited by the express provisions of § 29-2315.01, the State's failure to comply with § 29-2315.01 in the instant case prevents this court from having jurisdiction . . . ." *Johnson*, 259 Neb. at 947, 613 N.W.2d at 463 (emphasis supplied).

More recently, we again concluded that orders granting discharge on statutory speedy trial grounds are properly

challenged via an exception proceeding. In *State v. Bixby*, 311 Neb. 110, 971 N.W.2d 120 (2022) (*Bixby*), after a district court granted a criminal defendant absolute discharge, the State filed both an ordinary appeal pursuant to § 25-1912 and an exception proceeding under § 29-2315.01. We concluded that we had jurisdiction to hear the exception proceeding pursuant to § 29-2315.01. Although we did not explain our reasoning, our conclusion that we had jurisdiction to hear the exception proceeding is consistent with the conclusion reached in *Johnson* that an order granting absolute discharge is entered in a criminal case and thus subject to review under § 29-2315.01.

In its petition for further review, the State argues that its position that it could obtain review via an ordinary appeal is supported by our decision in *State v. Harris*, 307 Neb. 237, 948 N.W.2d 736 (2020). In *Harris*, we did determine that we had jurisdiction over an ordinary appeal filed by the State challenging an order granting a criminal defendant's motion for absolute discharge on speedy trial grounds. But *Harris* came to this court with a procedural history that was uniquely complicated, and that uniquely complicated procedural history was central to our jurisdictional analysis.

In *Harris*, the order granting absolute discharge was entered in a postconviction proceeding, which is recognized as civil in nature. See, e.g., Neb. Rev. Stat. § 29-3001(2) (Cum. Supp. 2024) (providing that postconviction proceedings are "civil in nature"); *State v. Pratt*, 273 Neb. 817, 733 N.W.2d 868 (2007). There, the district court had entered an order granting a new criminal trial. But we determined that order was void because in a previous appeal in the same case, this court had issued a mandate requiring the district court to first conduct proceedings under the Nebraska Postconviction Act. Because the order granting a new trial was a nullity, we explained that the order granting absolute discharge was actually entered in the context of postconviction proceedings. And because proceedings under the Nebraska Postconviction Act are recognized to be civil in nature, see *Harris, supra*, we held that

the State's ordinary appeal was not subject to the limits on the State's right to appeal in criminal cases.

We made clear in *Harris* that we were not holding that the State could always challenge an order granting absolute discharge on speedy trial grounds via an ordinary appeal. We stated that we did not have to decide whether the principle that the State has no right to appeal in a criminal case absent specific statutory authorization would bar "an ordinary order granting a defendant's motion for absolute discharge." *Id.* at 270, 948 N.W.2d at 760. *Harris* held that the State may obtain review of an order granting absolute discharge in the extremely rare case in which a trial court grants absolute discharge in the context of postconviction proceedings. *Harris* does not speak to whether the State could pursue an ordinary appeal in this case.

To sum up our precedent in this area, we determined in *Johnson* and *Bixby* that orders granting a criminal defendant absolute discharge are properly challenged via exception proceedings. *Harris* recognized a narrow exception in which such an order could be challenged via an ordinary appeal, but that exception does not apply here. We next discuss the relevance of our precedent to the case before us today.

### (d) Stare Decisis

Our prior determinations that orders granting a criminal defendant absolute discharge are properly challenged via exception proceedings are significant to our resolution of this case. As we have recognized on a number of occasions, the doctrine of stare decisis generally requires appellate courts to adhere to their previous decisions. See, e.g., *Cano v. Walker*, 297 Neb. 580, 901 N.W.2d 251 (2017).

The doctrine of stare decisis has its roots in the English common law. No less an authority on that subject than Sir William Blackstone wrote that "it is an established rule to abide by former precedents" to "keep the scale of justice even and steady, and not liable to waver with every new judge's

opinion." 1 William Blackstone, Commentaries on the Laws of England 69 (1768). The doctrine's common-law heritage is relevant because in 1866, Nebraska adopted the common law of England as the law within Nebraska to the extent not inconsistent with the "[C]onstitution of the United States, with the organic law of this territory, or with any law passed or to be passed by the legislature of this territory." See Rev. Stat. ch. 7, § 1, p. 31 (1866), now codified at Neb. Rev. Stat. § 49-101 (Reissue 2021).

Not only does the doctrine of stare decisis have common-law origins, courts have recognized that it advances important values. The U.S. Supreme Court has observed that the doctrine of stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991). We have said the same. See, e.g., *Cano, supra*. See, also, The Federalist No. 78 at 470 (Alexander Hamilton) (Clinton Rossiter ed., 2003) (observing that stare decisis is "indispensable" to "avoid an arbitrary discretion in the courts").

Obviously, stare decisis is not an "inexorable command." *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 292, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022). Appellate courts can decide that a previous decision should not be followed. This court has done so many times. See, e.g., *Bogue v. Gillis*, 311 Neb. 445, 973 N.W.2d 338 (2022); *Porter v. Porter*, 309 Neb. 167, 959 N.W.2d 235 (2021); *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019); *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019); *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). Under the doctrine of stare decisis, however, "adherence to precedent is the norm." *Ramos v. Louisiana*, 590 U.S. 83, 120, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020) (Kavanaugh, J., concurring in part). Moreover, the

question of whether a court should deviate from a prior decision is itself guided by legal principles.

[4] When called to decide whether precedent should be followed or overruled, courts often consider what Justice Kavanaugh has described as "precedents on precedent." *Id.* In that vein, we have said that the doctrine of stare decisis does not require appellate courts to blindly perpetuate a prior interpretation of the law if it was clearly incorrect, but it is entitled to great weight and requires that the courts adhere to their previous decisions unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so. *Cano v. Walker*, 297 Neb. 580, 901 N.W.2d 251 (2017). In deciding whether to adhere to prior decisions, we have also considered factors identified by the U.S. Supreme Court as relevant to that task, including "workability [of the precedent], the antiquity of the precedent, whether the decision was well reasoned, whether experience has revealed the precedent's shortcomings, and the reliance interests at stake." *Heckman v. Marchio*, 296 Neb. 458, 467, 894 N.W.2d 296, 302 (2017).

With these principles in mind, we will next consider whether we should adhere to our prior decisions that an order granting absolute discharge is properly challenged via an exception proceeding or adopt the State's argument that such an order can be challenged via an ordinary appeal.

(e) Adhere to Precedent?

The State contends that to the extent *Johnson* and *Bixby* held that an order granting absolute discharge is properly challenged via an exception proceeding, those decisions were wrong. As noted above, the State argues that proceedings to resolve a motion for absolute discharge are civil in nature and that therefore, an order granting discharge can be challenged via an ordinary appeal.

Before assessing the State's argument, we observe that, for us to deviate from our decisions in *Johnson* and *Bixby*, the

State must do more than show that those decisions were simply incorrect. As Justice Scalia once wrote, if a prior decision can be ignored solely upon a determination that it was wrong, the doctrine of stare decisis "would be no doctrine at all." *Hubbard v. United States*, 514 U.S. 695, 716, 115 S. Ct. 1754, 131 L. Ed. 2d 779 (1995) (Scalia, J., concurring in part and concurring in judgment). We have recognized that the relative merits of a prior decision can be relevant to whether that decision should be followed in subsequent cases but have said that a prior decision can be overruled if it was "*clearly* erroneous" or "*manifestly* wrong." *Cano*, 297 Neb. at 593, 901 N.W.2d at 260 (emphasis supplied). See, also, *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 268, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022) (describing overruled precedent as "egregiously wrong"); *Ramos v. Louisiana*, 590 U.S. 83, 121, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020) (Kavanaugh, J., concurring in part) (explaining that in considering whether to give prior decision stare decisis effect, question is whether that decision is "not just wrong, but grievously or egregiously wrong").

The State appears to face a difficult challenge in showing that *Johnson* and *Bixby* were clearly erroneous. In neither case did this court explain its reasoning in extensive detail, but our determination in those cases that an order granting discharge is properly challenged via an exception proceeding plainly rested on the conclusion that an order granting absolute discharge is an order entered in a criminal case. At least at first blush, that conclusion seems far from clearly wrong.

A motion for absolute discharge based on the statutory right to a speedy trial asserts that the State has failed to try *a criminal defendant* within a required timeframe. When successful, it results in the dismissal of the *criminal charges*. The statutes recognizing the right to a speedy trial appear in the statutory chapter dealing with *criminal procedure*. See Neb. Rev. Stat. § 29-1205 et seq. (Reissue 2016). A motion for absolute discharge is also distinguishable from various other proceedings that collaterally attack criminal judgments of

conviction and are recognized to be civil in nature, see *State v. Harris*, 307 Neb. 237, 948 N.W.2d 736 (2020); a motion for absolute discharge is filed in a criminal action before any judgment is entered. And, notwithstanding the State's position in this case that proceedings on a motion for absolute discharge are civil in nature, counsel for the State agreed at oral argument that criminal defendants retain their Sixth Amendment right to counsel during proceedings on a motion for absolute discharge, even though the Sixth Amendment applies in "criminal prosecutions."

Despite all that, the State maintains that proceedings on a motion for discharge are civil in nature. Proceedings on a motion for discharge have been recognized to be special proceedings, and, according to the State, all special proceedings are inherently civil.

The State's argument in support of its position primarily relies on history. Marshaling an impressive array of original and secondary sources, the State makes a case that in 1858, when the Nebraska Territorial Legislature first enacted a code of procedure and included reference to "special proceedings," that phrase would have been understood to refer to a category of proceedings that were inherently civil in nature. The State points out that the code of procedure adopted by the Nebraska Territorial Legislature was based on a code that had been adopted in Ohio, which was itself patterned after the New York Code of Procedure—popularly known as the Field Code. See John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239 (2001). Although the Field Code and the Nebraska code of procedure that was based upon it recognized the existence of civil actions, criminal actions, and special proceedings, the State argues that because the operative provisions of the code exclusively concerned civil procedure, "special proceedings" would have been understood to be civil in nature.

In addition, the State argues that at the time of the adoption of the Field Code and the Nebraska code of procedure, civil

actions, criminal actions, and special proceedings would have been understood to be distinct from one another. According to the State, civil actions would have been understood to refer generally to proceedings brought to enforce rights recognized by the common law; criminal actions would have been understood to refer to actions brought by the State for punishment of public offenses; and special proceedings would have been understood to refer to proceedings brought to enforce rights created by positive law and unknown to the common law. And because a person could not be tried and convicted of a crime in a special proceeding, the State submits, special proceedings must have been understood to be civil in nature.

Finally, the State also relies on precedent from both this court and courts of other states. The State cites to language in some of our prior decisions that have described special proceedings as "civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes." See, e.g., *Steven S. v. Mary S.*, 277 Neb. 124, 129, 760 N.W.2d 28, 33 (2009). It also cites to several decisions from courts of other states that used similar language to describe special proceedings. See, e.g., *Schuster v. Schuster*, 84 Minn. 403, 407, 87 N.W. 1014, 1015 (1901) ("[t]he phrase 'special proceeding,' within its proper definition, is a generic term for all civil remedies in courts of justice which are not ordinary actions"). The State argues that these cases reflect that special proceedings have long been understood to be inherently civil.

We have considered the State's arguments but are not persuaded that it was clearly wrong to conclude that an order granting absolute discharge is entered in a criminal case and thus properly challenged via § 29-2315.01. First, we do not draw the same significance the State does from the fact that the 1858 code of procedure focused exclusively on civil matters. Even if the other portions of that code pertained to civil procedure, it does not automatically follow, in our view, that the special proceedings referred to in the code were inherently civil.

And while actions and special proceedings may well have been originally understood to be mutually exclusive categories (indeed, our law continues to treat them as such today, see *Tegra Corp. v. Boeshart*, 311 Neb. 783, 799, 976 N.W.2d 165, 180 (2022) ("special proceedings and actions are mutually exclusive categories")), neither does that dictate, in our view, that all special proceedings must be civil in nature. A special proceeding that arises out of a criminal action and the criminal action itself could be distinct from one another and yet share the same criminal nature. Indeed, the State's concession that criminal defendants continue to have a Sixth Amendment right to counsel during proceedings on a motion for discharge recognizes that, at least for some purposes, proceedings on a motion for discharge are of the same nature as the underlying criminal action.

As for the language in opinions from this court and others referring to special proceedings as civil remedies, this too fails to persuade us that *Johnson* and *Bixby* were clearly wrong to conclude that proceedings on a motion for discharge are criminal in nature. Over the years, this court has described special proceedings in several different ways. See John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239, 243 (2001) ("[t]he court has defined 'special proceeding' in three ways"). And while one of those descriptions refers to special proceedings as "'civil statutory remed[ies],'" see *id*., we have also said that a special proceeding "occurs where the law confers a right and authorizes a special application to a court to enforce the right." *Tegra Corp.*, 311 Neb. at 798, 976 N.W.2d at 179-80. This latter description is considerably broader than the one that describes special proceedings as "civil statutory remed[ies]." See Lenich, 80 Neb. L. Rev. at 244 (observing that latter description "seems to be much broader" than alternatives).

In addition, it has been observed that the various descriptions of special proceedings employed by this court have

functioned as something other than precise definitions. As Professor Lenich colorfully once explained with citations to supporting cases:

> The cases say that special proceedings are civil—yet there are special proceedings that are criminal. The cases say that special proceedings are statutory—yet there are special proceedings that are nonstatutory. The cases say that special proceedings are not encompassed in chapter 25 of the Nebraska Revised Statutes—yet there are special proceedings that are encompassed in chapter 25.

Lenich, 80 Neb. L. Rev. at 240-41.

Beyond all we have already discussed, even if it is assumed for argument that the State is correct that special proceedings were originally understood to refer to "civil remedies," this would solve one problem for the State in this case, but create another. Specifically, a determination that special proceedings refer exclusively to "civil remedies" would cast doubt on whether proceedings on a motion for discharge on speedy trial grounds are properly considered to fall within the category of special proceedings. As we discussed above, a motion for discharge is closely tied to a criminal case. It is difficult to see what would justify saying that a motion for discharge seeks a "civil remedy." When we first concluded that proceedings on a motion for discharge fell into the category of special proceedings in *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997), we did not do so based on a determination that a motion for discharge seeks a civil remedy. Instead, we observed that a motion for discharge "is a legally conferred right that authorizes a special application to a court for enforcement" and "is a statutory remedy which is not itself an action." *Id.* at 254, 570 N.W.2d at 336.

We do not bring up our determination in *Jacques* that a motion for discharge is decided within a special proceeding to call it into question; no one in this case is asking us to reconsider whether *Jacques* was correct. We bring it up merely to make the point that even if the State is right that

special proceedings were originally understood to be civil in nature, that does not necessarily mean that we were wrong to conclude in *Johnson* and *Bixby* that proceedings on a motion for discharge are criminal in nature and thus are subject to review via exception proceedings.

Not only has the State not demonstrated that *Johnson* and *Bixby* are obviously wrong, it has failed to point to any other factors that would support a deviation from our decisions in those cases. The State has not, for example, demonstrated that *Johnson* and *Bixby* are somehow unworkable or pose some difficulty that the State cannot overcome. See *Heckman v. Marchio*, 296 Neb. 458, 467, 894 N.W.2d 296, 302 (2017) (identifying "workability" as factor to consider in deciding whether to adhere to principle of stare decisis). While § 29-2315.01 does impose some additional procedural requirements on the State if it wishes to obtain review of an order granting absolute discharge, the State has successfully initiated exception proceedings to challenge orders granting absolute discharge in many previous cases. See, e.g., *State v. Space*, 312 Neb. 456, 980 N.W.2d 1 (2022); *State v. Bixby*, 311 Neb. 110, 971 N.W.2d 120 (2022); *State v. Washington*, 269 Neb. 728, 695 N.W.2d 438 (2005); *State v. Knudtson*, 262 Neb. 917, 636 N.W.2d 379 (2001); *State v. Florea*, 20 Neb. App. 185, 820 N.W.2d 649 (2012). And, if the State completes the steps necessary to obtain review via an exception proceeding and convinces the appellate court that the district court's order granting discharge was erroneous, that order will be reversed and the cause remanded for further proceedings. See, e.g., *Bixby, supra*. It is not clear why in this case the State did not follow the well-worn path that would have allowed it to obtain a complete review of the district court's discharge order.

Having considered the stare decisis factors, we are not persuaded that we should overrule *Johnson* and *Bixby*. We thus conclude that the State could not challenge the order granting absolute discharge via an ordinary appeal and that the Court

of Appeals did not err in dismissing the State's appeal based on the State's failure to complete the steps necessary to initiate an exception proceeding under § 29-2315.01. The State's first assignment of error lacks merit.

## 2. Response Time

In addition to its claim that the Court of Appeals erred by finding that the State was required to comply with § 29-2315.01, the State assigned another error in its petition for further review. It assigned that the Court of Appeals erred by dismissing the State's appeal before its time to respond to Jones' motion for summary dismissal had expired. The State argued that further review should be granted so the question of appellate jurisdiction presented in this case "is not summarily decided without the benefit of comprehensive adversarial briefing." Brief for appellant in support of petition for further review at 10.

The Court of Appeals did sustain Jones' motion for summary dismissal before the motion was submitted under the rules of appellate procedure. Under those rules, an appellant may file a written response opposing a motion for summary dismissal within 10 days from the date of the service of the motion. See § 2-107(B)(4). The rules also provide that a motion for summary disposition is not "considered submitted" until either the "filing of objections or the expiration of time allowed therefor, or express waiver of the right to file." See § 2-107(B)(5). By sustaining Jones' motion before the State had filed a response, before the State had expressly waived its right to respond, or before the State's time to respond had expired, the Court of Appeals decided Jones' motion before it was ripe for decision.

But even though the Court of Appeals should have allowed the State to file a response before sustaining Jones' motion for summary dismissal, the State cannot show that it was prejudiced. After the Court of Appeals sustained Jones' motion, the State had the opportunity to make its case for why its appeal

should not have been dismissed in its petition for further review. Then, after we granted further review, the State submitted a nearly 50-page brief outlining its position in this case. The State then had the opportunity to further develop its position in oral argument. After all that, we considered the State's position and addressed it in this opinion. Whatever else may be said about this case, it can certainly no longer be said that the issue presented was decided summarily or without comprehensive adversarial briefing.

Because the State has now had the opportunity to fully present its case, but we nonetheless conclude that the Court of Appeals' dismissal—although perhaps premature—was substantively correct, the State is not entitled to relief on its second assignment of error.

## V. CONCLUSION

At the conclusion of an appeal that resolves such an obscure question of appellate jurisdiction, an observer could be forgiven for asking why any of this really matters or, more specifically, why the State's mere failure to follow a few procedures prevents us from entertaining its challenge to Jones' discharge. The answer lies in our constitutional separation of powers. The Legislature decides, through the enactment of statutes, how and when appellate courts can exercise power. See *Heckman v. Marchio*, 296 Neb. 458, 464, 894 N.W.2d 296, 301 (2017) ("[t]hrough the enactment of statutes, the Legislature has prescribed when a court may exercise appellate jurisdiction [and] the judicial branch may not circumvent such statutory authorization"). Because the State failed to comply with § 29-2315.01 in a case in which it was required to do so to obtain review, the appellate courts lack the power to decide the State's challenge. The Court of Appeals thus correctly dismissed the State's appeal. We affirm its dismissal.

AFFIRMED.

BERGEVIN, J., not participating.